598 S.E.2d 717

CHARLESTON, S.C. REGISTRY FOR GOLF & TOURISM, INC., a/k/a Charleston Registry for Golf and Tourism, Inc., Calvin Stone, and Martin James Barrier, Appellants,

v.

YOUNG CLEMENT RIVERS & TISDALE, LLP, Respondent.

No. 3831.

Court of Appeals of South Carolina.

Submitted April 6, 2004.

Decided June 21, 2004.

Rehearing Denied August 18, 2004.

636

Fleet Freeman and Lon H. Shull, both of Mt. Pleasant, and Thomas R. Goldstein, of Charleston, for Appellants.

Susan Pedrick McWilliams, Regina Hollins Lewis and Nikole Setzler Mergo, all of Columbia, for Respondent.

BEATTY, J.:

Charleston, S.C. Registry for Golf and Tourism, Inc., a/k/a Charleston Registry for Golf and Tourism ("Charleston Registry") along with Calvin Stone and Martin James Barrier ("Appellants") brought this suit against the law firm of Young, Clement, Rivers & Tisdale, LLP ("Young Clement") alleging causes of action for negligence, breach of fiduciary duty, and negligent supervision related to the firm's affiliation with attorney Douglas A. Barker. The circuit court granted summary judgment in favor of Young Clement on all of the claims. We affirm.

## FACTS

The claims raised in this case center around the individual business activities and legal employment of Douglas Barker. During the relevant time periods, Barker was a partner in the fledgling business, Charleston Registry, and an associate attorney practicing with the Young Clement law firm. The

origin, course, and overlap of Barker's independent business and legal endeavors are key to understanding the nature of the claims brought against Young Clement. The undisputed facts surrounding these relationships are described below.

## Barker's Association with Charleston Registry

Barker first met Calvin Stone and Martin J. Barrier in Charleston sometime in the late 1980s. Barker left Charleston in 1990 to attend law school in California. Shortly thereafter, Stone and Barrier formed Charleston Registry, a business that planned and sold golf trips.

Barker returned to Charleston in the summer of 1993 to complete a legal internship. During that time, he learned of Stone and Barrier's new business venture. After inquiring with Stone and Barrier, he was invited to work part-time for Charleston Registry that summer performing accounting and bookkeeping work.

After graduating from law school, Barker worked as an attorney in California. In 1995, while still practicing law in California, Barker contacted Stone and Barrier about becoming involved in the business. Over the course of several phone conversations in the fall of 1995, Stone informed Barker that the business was doing well and growing rapidly but expressed concern that the accounting functions were becoming overwhelming for him and Barrier.

In late 1995 or early 1996, Barker informed Barrier that he was moving back to Charleston and that he would "soon be employed by a prestigious law firm in Charleston." Barker proposed to Barrier that he could provide legal and accounting services to Charleston Registry in exchange for an ownership interest in the business. After meeting with Barker in early 1996, before Barker's employment with Young Clement, Barrier decided to relinquish his ownership interest in the business to Barker in exchange for protection from any tax liability Charleston Registry had incurred.[1]

After this agreement was reached, all accounting functions were turned over to Barker. Barker took possession of all of Charleston Registry's financial records, the company's post

---

1. This agreement was not reduced to writing until September 1996.

office box key, and the company's checkbook. Stone subsequently granted Barker signature authority on the business checking account.

## Barker's Employment at Young Clement

After assuming control of the legal and financial affairs of Charleston Registry, Barker began work as an associate attorney at Young Clement on April 1, 1996. The general terms of his employment at Young Clement were memorialized in a May 31, 1996 letter to Barker from Thomas Tisdale, the firm's managing partner. Regarding Barker's work assignments, the letter provided:

> *Work Assignments.* We are looking forward to having you work as an associate attorney, primarily in the litigation area of our firm. You will be working with Brad Waring in connection with your training and most of your work assignments. He will be accountable to the firm for the progress of your training. *You should discuss with him all matters relating to your assignments, and with me, all other matters relating to your relationship with the firm. The firm is employing your total and best professional efforts.* Although you will normally handle your work assignments during regular office hours, we will expect you to devote such additional time as may be necessary to complete assignments entrusted to you.

(Emphasis added).

The law firm also had in place strict procedures for keeping track of all the professional activities its attorneys engaged in—regardless of whether those activities were directly related to their work at Young Clement. Young Clement required its lawyers to record the precise amount of time they spent working on client projects each day. Young Clement's policy, however, extended further than recording billable hours for purposes of charging clients for services rendered. Young Clement mandated that time records be maintained for all time expended by lawyers and paralegal personnel whether or not the particular endeavor is billable to a client, with the single exception of the lunch break.

In direct contravention of these policies and procedures, Barker continued to be involved with and perform services for

Charleston Registry while working at Young Clement. Between April and September 1996, Barker prepared several documents on behalf of the corporation, including proposed bylaws of the company, a renunciation of rights for Martin Barrier, and minutes of the organizational meeting of the board of directors. Barker, Stone, and Barrier met on September 12, 1996 and executed or adopted these documents.

Also during his tenure at Young Clement, Barker used the law firm's letterhead to write two letters pertaining to Charleston Registry. The first letter, dated December 20, 1996, was addressed to Paul Dominick, an attorney at another law firm. The letter indicated Barker had been retained by Calvin Stone and Charleston Registry to represent the company in a defamation claim against clients of Dominick. Barker testified, however, that he never mailed the letter because Stone did not think it was worth the effort to proceed with the matter after Barker faxed Stone a draft of the letter. This testimony is uncontroverted.

The second letter, dated May 22, 1997, was addressed to Stone. In the letter, Barker alleged that Stone had improperly absconded with some of Charleston Registry's corporate accounting records and instructed Stone to ensure the records be maintained intact. Barker stated in the letter he was writing "[a]s the CEO of CRGT, Inc." and "a 50% shareholder and director of that corporation."

None of his activities involving Charleston Registry was ever discussed with Tisdale, Waring, or any other lawyer or staff member at Young Clement. Barker never recorded any of his work for Charleston Registry on his hourly time records. Young Clement never opened a file for Charleston Registry or sent an engagement letter to Charleston Registry. Young Clement never billed Charleston Registry, Stone, or Barrier for any services rendered by Barker. Furthermore, Stone and Barrier never had any contact with attorneys at Young Clement regarding their involvement with Barker.

In September 1997, Barker received a demand letter from counsel for Charleston Registry, Stone, and Barrier which alleged Barker had misappropriated corporate funds and committed professional malpractice. Barker immediately brought the letter to the attention of Tisdale. Tisdale and Waring

then reviewed everything in Barker's files regarding Charleston Registry. Tisdale fired Barker a week later.

Charleston Registry proceeded with their suit against Barker individually, and in May of 2000, they brought the present action against Young Clement seeking damages for negligence, breach of fiduciary duty, and negligent supervision. After the close of discovery, the trial court granted Young Clement's motion for summary judgment in October 2002. This appeal followed.

## STANDARD OF REVIEW

A trial court should grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *see also Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997); *Wells v. City of Lynchburg,* 331 S.C. 296, 301, 501 S.E.2d 746, 749 (Ct.App.1998). In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court: summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Baughman v. Am. Tel. & Tel. Co.,* 306 S.C. 101, 114–15, 410 S.E.2d 537, 545 (1991). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998).

## LAW/ANALYSIS

### I. Breach of Fiduciary Duty and Negligence

Appellants first argue the trial court erred in dismissing their claims against Young Clement for breach of fiduciary duty and negligence. We disagree.

Before considering whether or not there are material questions of facts sufficient to defeat a summary judgment motion on the merits of Appellants' claims, we must first consider

whether or not Young Clement is subject to judgment on Appellants' claims. Under these claims, Appellants allege that, while working as an attorney for Young Clement, Barker agreed to perform legal and financial services for Charleston Registry and then failed to fulfill those agreed-upon duties. Though these allegations concern only the acts and omissions of Barker, Appellants contend Young Clement was liable based on its agency relationship with Barker. Appellants claimed Young Clement endowed Barker with apparent authority to transact business on behalf of the law firm. The trial court disagreed, ruling Appellants failed to present any evidence to a support finding that Barker acted with the actual or apparent authority of Young Clement.

An agency relationship may be established by evidence of actual or apparent authority. *Fochtman v. Clanton's Auto Auction Sales*, 233 S.C. 581, 583, 106 S.E.2d 272, 274–75 (1958). While actual authority is that which is expressly conferred upon the agent by the principal, apparent authority is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which the principal holds the agent out as possessing. *Moore v. North Am. Van Lines*, 310 S.C. 236, 239, 423 S.E.2d 116, 118 (1992). This Court has further refined the definition of apparent authority:

> The doctrine of apparent authority focuses on the principal's manifestation to a third party that the agent has certain authority. Concomitantly, the principal is bound by the acts of its agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption. Thus, the concept of apparent authority depends upon manifestations by the **principal** to a third party and the reasonable belief by the third party that the agent is authorized to bind the principal.

*R & G Const., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 432, 540 S.E.2d 113, 117–18 (Ct.App.2000) (citations omitted) (emphasis added). Accordingly, "[t]he proper focus in determining a claim of apparent authority is not on the relationship between the principal and the agent, but on that

between the principal and the third party." *Id.* at 432, 540 S.E.2d at 118. Further, "[a]n agency may not be established solely by the declarations and conduct of an alleged agent." *Frasier v. Palmetto Homes of Florence, Inc.*, 323 S.C. 240, 245, 473 S.E.2d 865, 868 (Ct.App.1996).

Based upon these general principles, our courts have required three elements be proven to establish apparent authority: "(1) that the purported principal consciously or impliedly represented another to be his agent; (2) that there was a reliance upon the representation; and (3) that there was a change of position to the relying party's detriment." *Graves v. Serbin Farms, Inc.*, 306 S.C. 60, 63, 409 S.E.2d 769, 771 (1991).

■ Appellants offered no evidence which would tend to prove Young Clement consciously or impliedly represented to Charleston Registry that Barker was its agent prior to Barker's relationship with Charleston Registry. Nor did Appellants offer any evidence of a change in the character of Charleston Registry's relationship with Barker or Young Clement after Barker began working at Young Clement. Barker's relationship with Charleston Registry began well before his first day of work at Young Clement. As described above, Barker offered his legal and accounting services to Charleston Registry at least four months prior to beginning work at the law firm. It is also undisputed that Barker took possession of the company's financial records one month before starting with Young Clement. Though Stone and Barrier claim Barker told them in early 1996 that he would soon be working for a prestigious law firm, Stone admitted in his testimony that, at that time, he did not believe that Charleston Registry was represented by Young Clement.

■ Appellants have likewise failed to offer any proof that, during the time Barker actually worked at Young Clement, the law firm consciously or impliedly held Barker out as its agent with respect to Barker's handling of Charleston Registry's affairs. In fact, the evidence, as recited above, indicates otherwise: Young Clement never sent an engagement letter to Charleston Registry; no retainer agreement was ever entered into between Young Clement and Charleston Registry; the firm opened no file for Charleston Registry or its principals,

Stone and Barrier; Young Clement never billed Charleston Registry for any services rendered or ever profited in any way from Barker's involvement with the company; and, Stone and Barrier admitted that neither of them ever spoke with an attorney at Young Clement regarding Charleston Registry or any other matter and most of their meetings with Barker took place during lunch.

The only evidence which could have possibly indicated Barker was acting on behalf of Young Clement were the two letters he wrote using the firm's letterhead. As noted above, however, only one of those letters was actually mailed, and the one that was mailed clearly indicated in the body of the letter that Barker was writing in his capacity as an owner and manager of Charleston Registry, not as an attorney with Young Clement. It would have been wholly unreasonable, therefore, for Barrier and Stone to surmise from this letter that the firm of Young Clement had taken on Charleston Registry as a client. Moreover, there is no evidence that Appellants relied, to their detriment, on any representation made by Young Clement.

Because no genuine issue of fact was raised as to the first element necessary for apparent authority, Appellants' claims fail as a matter of law. We therefore find no error in the trial court's grant of summary judgment on these claims.

## II. Negligent Supervision

■ Appellants next argue the trial court erred in dismissing their claim for negligent supervision against Young Clement. We disagree.

■ In this cause of action against Young Clement, Appellants claim the law firm negligently supervised Barker by failing to adequately monitor his involvement with Charleston Registry. The disposition of this claim depends upon whether Young Clement owed a duty to Charleston Registry. If Young Clement owed no duty to Charleston Registry any harm suffered by Charleston Registry is irrelevant. This is because the common law ordinarily imposes no duty on a person to act. *See Rayfield v. South Carolina Dep't of Corrections*, 297 S.C. 95, 100, 374 S.E.2d 910, 913 (Ct.App. 1988). Thus, a person usually incurs no liability when he fails to take steps to protect others from harm not created by his

own wrongful conduct. *Id.* However, our supreme court has held that an employer is under a duty in some circumstances to exercise reasonable care to control an employee acting outside the scope of employment. *See Degenhart v. Knights of Columbus,* 309 S.C. 114, 116, 420 S.E.2d 495, 496 (1992). The Court in *Degenhart* found that an employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control. *Id.* at 115–17, 420 S.E.2d at 496; *see also* Restatement (Second) of Torts § 317 (1965) (outlining the same elements for negligent supervision).[2]

As with the agency issue discussed above, the elements necessary to prove negligent supervision of an employee acting outside of the scope of his employment are not present in the record. The record before us contains no evidence that Young Clement knew, or should have known, of Barker's involvement with Charleston Registry. Therefore, Young Clement did not know of the necessity to control Barker.

The only additional evidence Charleston Registry offered on this issue was Young Clement's internal performance reviews of Barker. In these reviews, senior Young Clement attorneys reviewed the quality of Barker's work and his ability to get along with other employees at the law firm. These reviews uniformly rated Barker's performance as poor. Charleston Registry claims these negative reviews should have alerted Young Clement to the need to monitor Barker's activities more closely, which they argue would have led them to discover Barker's involvement with Charleston Registry.

---

2. An employer may have a legal duty to use due care in supervising an employee as a result of a contractual relationship with the employee. This duty sounds in tort, not in contract. This ensuing duty is limited to the employee's actions undertaken in his capacity as an agent for the employer. *Degenhart,* 309 S.C. at 117, 420 S.E.2d at 496–497; *see also Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 302, 468 S.E.2d 292, 299 (1996). Since Baker was acting in his individual capacity, this theory is not applicable.

We find no merit to this argument. The performance reviews contained in the record concern only Barker's past work for Young Clement. They do not reference any of Barker's activities beyond the quality of his assigned work and his interaction with the firm's staff. Moreover, they give no indication that the Young Clement attorneys were aware of any business endeavors undertaken by Barker. The reviews, therefore, have no bearing on the question whether Young Clement knew or should have known of Barker's involvement with Charleston Registry.

Finding no evidence to support Charleston Registry's claim for negligent supervision, we are compelled to affirm the trial court's dismissal on summary judgment.

## CONCLUSION

Having reviewed all the evidence in the light most favorable to Appellants, we find they have failed to raise any genuine issue of material fact on their claims for breach of fiduciary duty, negligence, and negligent supervision. In sum, the undisputed material facts indicate that Barker's relationship with Charleston Registry was an independent business relationship. Accordingly, the trial court's order granting summary judgment in favor of Young Clement is

**AFFIRMED.**

HEARN, C.J., and ANDERSON J., concur.