670 S.E.2d 695
**Jonathan S. McCALL, Appellant,**
v.
**IKON, d/b/a IKON Educational Services, Respondent.**

No. 4466.

Court of Appeals of South Carolina.

Heard Nov. 19, 2008.
Decided Dec. 12, 2008.

Duke K. McCall, Jr., of Greenville, for Appellant.

Sandi R. Wilson and Keith D. Munson, of Greenville, for Respondent.

HUFF, J.

Jonathan S. McCall appeals from an order of the circuit court finding him entitled to damages of $24,379.33 on his breach of contract action against IKON Educational Services. We affirm.

## FACTUAL/PROCEDURAL HISTORY

This matter originally came before this court on IKON's appeal from the denial of relief from a default judgment against it and in favor of McCall. Finding IKON did not receive sufficient notice of the damages hearing, we remanded

the matter to the circuit court for a new hearing on damages. *McCall v. IKON,* 363 S.C. 646, 611 S.E.2d 315 (Ct.App.2005).

During this hearing, the parties presented evidence that in November 2001, McCall signed an agreement with IKON for an "Enterprise Training Pass," entitling him to twelve months of unlimited course attendance at any scheduled IKON public systems training course in certain specified areas, including Microsoft, Novell and Lotus. McCall entered the course of study with the goal of becoming a Microsoft Certified Systems Engineer, and paid IKON tuition of $12,500. At that time, McCall held a Bachelor's degree in biology, as well as a Master's degree in forestry, and had worked for a number of years in the forestry related area.

In order to become a certified Microsoft Systems Engineer, McCall needed to pass tests in seven different courses that were administered by an independent agency. McCall began attending IKON classes on November 19, 2001, and completed three courses. He subsequently passed two of the seven required tests. However, IKON sold the company to CESC in the last quarter of 2001 and, thereafter, on January 2, 2002, CESC chose to cease operating in the Greenville area.

After learning of the closing, McCall went to the training facility and requested a refund of $12,500. On January 9, 2002, McCall filed the present breach of contract action, against IKON and CESC. *McCall,* 363 S.C. at 650, 611 S.E.2d at 316. On January 24, 2002, Clint Babcock sent McCall an e-mail with a document attached, requesting McCall sign and return the form to "cesc/IKON Education" if he agreed to the terms. The document offered a refund to McCall in exchange for McCall signing a release.[1] McCall testified he did not consider the document an offer, "because [he] never saw the check."

Thereafter, McCall began looking for a job and ultimately went to work for Schneider Tree Care as a consulting arborist

---

1. Curiously, while the parties and the circuit court refer to this document as an offer to refund $10,416.66, a reading of the attachment in the record indicates, although CESC believed it was only required to refund McCall the pro-rata amount of $10,416.66, CESC would provide him "a full refund of ($12,500) as an exception to [their] established policy."

in July 2002, where he earned approximately $35,000 a year. He continued his employment with Schneider until June 2004, at which time McCall left that job in order to pursue a Ph.D. in horticulture at Clemson University. McCall stated he worked as a graduate assistant while pursuing that degree, earning about $7,500, however, the program was discontinued within six months due to lack of research funding and McCall's position was terminated.[2] On March 21, 2005, McCall began work with the North Carolina Forest Service, earning $33,942 a year. In May 2003, during the time he was working at Schneider's and well before he entered the Ph.D. program, McCall received a settlement of $25,000 from CESC.[3]

McCall admitted that in January 2002, he was aware of two or three other courses available in the area that were sufficient for him to obtain the certification he sought and were less expensive. He further agreed that after CESC stopped providing training in the area in January 2002, he did not enroll in any of the other available computer classes. McCall claimed, however, that his lack of funds, created by the actions of IKON, kept him out of a career in computers. He asserted at trial that he was entitled to damages of $12,500 plus prejudgment interest for the tuition he paid, lost wages for a period of six months, and interest of six percent incurred on the money borrowed for the tuition.

McCall further presented Dr. Charles Alford as an expert witness in economics and business valuation.[4] Dr. Alford testified he computed the present value difference between a projection of lifetime earnings McCall would have received had he entered a career in the computer field as opposed to a projection of lifetime earnings in the forestry field in which

2. There is also evidence of record which suggests McCall's actual earnings for the year 2004 were only $4,964, and were thus less than the $7,500 he claimed to have made that year as a graduate assistant.

3. McCall testified he used this money to pay his mother the $12,500 he borrowed for the tuition and the rest was used to pay off two car loans. McCall admitted he did not pay interest on the loan from his mother.

4. IKON questioned Dr. Alford's qualification and his testimony regarding McCall's loss of earning capacity based upon the fact Dr. Alford was not a vocational expert, but the circuit court qualified Dr. Alford as requested and allowed the evidence, finding it was an issue which could be explored on cross-examination.

McCall was currently working. Dr. Alford compared McCall's current wages of $33,942 in forestry and his projected future earnings were he to stay with his current job against data from a South Carolina Occupational Employment and Wage report indicating the projected income of someone working as a systems administrator in the computer field at the time McCall would have finished the IKON program, along with his projected future income in that field. He opined that if McCall had become a computer systems engineer, he would receive $340,406 more in lifetime income and fringe benefits than he would if he remained a forester.

On cross-examination, Dr. Alford admitted he was not a vocational expert and was not qualified to determine employability. He testified he based his determination on projections for a network and systems administrator because McCall had identified that as his career objective, but agreed McCall had no employment history in the computer field and acknowledged he was not willing to offer testimony that McCall could have been employed as such. Dr. Alford also agreed his figures did not include starting McCall out at projected entry level earnings for a forester because he knew McCall's actual earnings at that time. He further admitted he did not take into account in the forestry earnings projection that McCall had years of experience as well as a Master's degree in forestry. He consistently stated that if the court were to determine McCall did not earn as much as he could have earned in the forestry field, the figures should be adjusted or "the whole thing [should] be set aside."

Dr. Benson Hecker testified on behalf of IKON as an expert in the area of vocational evaluation. Dr. Hecker testified, as a vocational evaluation specialist, he looked at a person's age, education, vocational background and skills, along with the job market to "put together an opinion regarding a person's capacity to earn money," to aid the court in determining a person's employability and salary levels. After reviewing information on McCall relative to these factors, as well as obtaining information from The U.S. Department of Labor Statistics showing State Occupation and Employment Wage Estimates for South Carolina, and further contacting Clemson University with regard to salary levels, Dr. Hecker was of the

opinion that McCall would suffer no loss of earning capacity as a result of the cancellation of the computer program.

In reaching his conclusion, Dr. Hecker opined McCall could have entered the forestry field in North Carolina at the mean salary level rather than at entry level, and determined the appropriate figure to use for determining McCall's expected salary in forestry was the mean salary level of between $51,000 and $52,000 based on McCall's experience and background. Dr. Hecker further testified it was his opinion McCall's failure to take the refund offered in January 2002 delayed his completion of a program and continuation of his education, and further delayed his entry into the job market. Had McCall been dedicated to entering the computer field, he reasonably would have accepted the offer and continued his education. As a result, there would be no loss. Additionally, Dr. Hecker noted McCall's receipt of the $25,000 settlement proceeds in May 2003 and his failure to continue his education in the computer field at that time indicated McCall's desire to work in the forestry industry instead of the computer field. It was his opinion that the best occupational career path for McCall was, and continued to be, in the forestry field. According to Dr. Hecker, Dr. Alford's present value calculations were of no import because he was of the opinion McCall suffered "no loss of earning, no loss of wages."

IKON also presented the testimony of Peter Tiffany, a Certified Public Accountant. Mr. Tiffany was offered and qualified as an expert in the area of computation of present values. Given the $52,000 mean salary figure for foresters in Dr. Hecker's report, Mr. Tiffany used the same inflation rates, growth rates and discount rates as Dr. Alford used in his analysis to project present value and determined, using the same assumption as Dr. Alford for the projected present value of earnings in the computer field, that the projected earnings in the forestry industry would be greater than those in the computer industry, resulting in no loss of earning capacity for McCall. Mr. Tiffany likewise performed the same calculations based on an average $40,000 starting salary range for foresters, taken from Dr. Hecker's report indicating such starting range is between $35,000 and $45,000, as well as on a mean salary range of $49,538 taken from an exhibit from Dr. Alford's deposition. In both cases, the present values of the

forestry earnings compared to the computer earnings resulted in a negative net result, showing no loss of earnings in the forestry field compared to the computer industry.

Based on the evidence presented, the circuit court found McCall was entitled to damages in the amount of $24,379.33. The court held the testimony of IKON's witnesses was more reliable, credible, and persuasive, and that Dr. Alford's opinion was not "reliable or probative on the issue of damages." The court noted, although McCall testified of his desire to pursue a career in computers, there was little evidence to support this assertion, the vast majority of McCall's education and employment was in forestry related fields, and McCall's "foray in the computer field" only lasted for approximately one month. The court further considered that Dr. Alford, who admitted he is not a vocational expert, based his opinion as to McCall's vocational aptitude entirely upon McCall's "beliefs as to his desires," and based his calculations of lost earnings in the computer field on a position McCall was merely "hoping to obtain." Because of the improper foundation on which Dr. Alford based his opinion as to the $340,406 difference in projected lifetime earnings between the two fields, the circuit court determined Dr. Alford's testimony did not provide persuasive evidence of McCall's loss of earnings or loss of earning capacity.

On the other hand, the court found Dr. Hecker, who is a vocational expert, considered the fact that comparable programs for computer study were available to McCall both in January 2002 when he was offered a refund, and May 2003 when he received the $25,000 settlement, yet McCall chose not to pursue any training in the computer field. Thus, it was reasonable to assume McCall's interests actually rested in the forestry field. The court agreed with Dr. Hecker that McCall's best vocational path was in the forestry related field and it would therefore be speculative to make a mathematical comparison of projected incomes between the computer and forestry fields. The court further found, however, even if the mathematical comparison is analyzed, the evidence confirms McCall suffered no loss of earnings or earning capacity. Finding the main difference between the parties' calculations to arise from the use of the starting salary in the forestry field, the court recognized Dr. Alford failed to consider

McCall's educational or employment background in the forestry field.

As to the loss of earnings McCall sought from January 2002 through 2005, the court found McCall could have returned to the workforce after CESC cancelled the program instead of waiting seven months to obtain employment. Additionally, McCall could have continued with his job as an arborist making in excess of $35,000 a year, but voluntarily quit that job and, thereafter, did not work for approximately one year before taking the North Carolina forestry job. Accordingly, the trial court determined McCall was, "for the most part, voluntarily unemployed or underemployed." The court further found McCall's claim for lost wages of $12,157 between January 2002 and July 2002 was the result of McCall's own decision to not be employed during that time period. The circuit court also noted, although McCall sought $1,012.70 in interest he allegedly paid his mother on a $12,500 note he signed for a loan on the tuition, McCall ultimately admitted that he did not, in fact, pay any interest on the note. Finally, the trial court found McCall's testimony regarding his reasons for failure to use the offered refund or settlement money to enroll in computer classes to lack credibility. The court thus determined McCall failed to mitigate any alleged damages by refusing to take available funds and pursue a career path in computers, and IKON should not be held responsible for any alleged economic loss due to McCall's decisions.

The court concluded McCall's claim for loss of future earnings and earning capacity were based wholly on speculation or conjecture and McCall failed to establish his claim for the same with reasonable certainty. It further held McCall failed to mitigate any such alleged damages resulting from the breach. However, the court determined McCall was entitled to damages for the tuition paid along with a reasonable amount for lost wages, resulting in a total sum of $24,379.33. The circuit court held, in light of the settlement money McCall received from CESC, IKON was entitled to a credit in the amount of $25,000, and the judgment was therefore to be marked satisfied.

## ISSUES

1. Did the trial court improperly calculate McCall's damages?

2. Did the trial court err in its admission and interpretation of the January 24, 2002 e-mail sent to McCall?

3. Were the damages of McCall "properly mitigated?"

4. Did the trial court err in requesting additional evidence of an asset purchase agreement between IKON and CESC after the conclusion of the damages hearing?

## STANDARD OF REVIEW

An action for breach of contract seeking money damages is an action at law. *Eldeco, Inc. v. Charleston County Sch. Dist.*, 372 S.C. 470, 476, 642 S.E.2d 726, 729 (2007). On appeal of an action at law tried without a jury, the findings of fact of the trial court will not be disturbed unless found to be without evidence which reasonably supports the trial court's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "Stated another way, the trial court's findings of fact will not be disturbed on appeal unless wholly unsupported by the evidence or unless it clearly appears the findings were influenced or controlled by an error of law." *Butler Contracting, Inc. v. Court St., LLC*, 369 S.C. 121, 127, 631 S.E.2d 252, 255 (2006). In such a case, the trial court's findings are equivalent to a jury's findings in a law action. *Id.* Further, questions concerning credibility and the weight to be accorded evidence are exclusively for the trial court. *Ward v. West Oil Co.*, 379 S.C. 225, 238, 665 S.E.2d 618, 625 (Ct.App.2008).

## LAW/ANALYSIS

### A. Calculation of Damages

On appeal, McCall first contends the circuit court improperly calculated his damages. He maintains he is entitled to damages of $12,500 for the tuition, $5,397.80 in prejudgment interest on the tuition, $12,157 in lost wages from January 4, 2002 through July 13, 2002, and a wage differential through at least June 1, 2004 of $32,164 for a total minimum in damages of $62,218.80. McCall also argues the court erroneously refused to consider the testimony of Dr. Alford based on the fact Dr. Alford was not a vocational expert, asserting Dr. Alford never addressed any vocational issues. McCall further

asserts IKON's witness used "the wrong category of earnings" by assuming McCall's salary in forestry would be $52,000 when his actual salary in that field was only $34,000.

We find no error in the circuit court's findings regarding Dr. Alford and its determination that McCall suffered no loss of earning capacity. There is more than sufficient evidence of record to support the court's findings that McCall's best vocational path was in the forestry field. The record further supports the court's determination that, even in performing a mathematical comparison between the forestry and computer fields, McCall still suffered no loss. The court did not, as McCall argues, refuse to consider the testimony of Dr. Alford. Rather, the court considered his testimony, but concluded it did not provide persuasive evidence of McCall's loss of earning capacity and found that IKON's witnesses were more reliable, credible and persuasive. As noted, in an action at law sitting without a jury, the trial court's findings are equivalent to that of a jury, and questions concerning credibility and the weight to be afforded evidence lie with the trial court.

Further, McCall does not argue on appeal that the circuit court's award of damages is unsupported by the evidence. Nor does McCall assert the trial court made a mathematical error in computation of the damages.[5] As to the specific figures to which McCall asserts he is entitled, he provides this court with no support for them in the record. In short, McCall summarily asserts he is entitled to these amounts without showing why the circuit court's calculation of damages was erroneous or how McCall's figures are supported by the evidence. See Weaver v. Recreation Dist., 328 S.C. 83, 88, 492 S.E.2d 79, 82 (1997); Ehlke v. Nemec Constr. Co., 298 S.C. 477, 481, 381 S.E.2d 508, 510 (Ct.App.1989) (noting an appealed order comes to the appellate court with a presumption of correctness and the burden is on appellant to demonstrate

---

5. Additionally, even if McCall contends the trial court made a mathematical computation error, it was incumbent upon McCall to raise the issue by way of a Rule 59 or 60, SCRCP motion to preserve the matter on appeal. See Revis v. Barrett, 321 S.C. 206, 210, 467 S.E.2d 460, 463 (Ct.App.1996) (holding issue was not preserved on appeal where appellants never filed a motion to alter or amend the judgment to clarify the order pursuant to Rule 59, SCRCP, nor seek clarification pursuant to Rule 60(a), SCRCP and, issue was therefore not raised to and ruled upon by the trial court).

reversible error); *See also Harris v. Campbell*, 293 S.C. 85, 87, 358 S.E.2d 719, 720 (Ct.App.1987) (noting our court is "obliged to reverse when error is called to our attention, but we are not in the business of figuring out on our own whether error exists"). Accordingly, we find McCall has failed to meet his burden of demonstrating reversible error.

## B. Error in Admission and Interpretation of E-mail

McCall next contends the circuit court erred in admitting into evidence the e-mail sent by Clint Babcock to McCall on January 24, 2002 because McCall was seeking damages from IKON and the e-mail involved negotiations between him and CESC, not him and IKON. He further contends the court erred in interpreting the e-mail as an offer when it was only an invitation to negotiate. Finally, McCall claims there was no showing that the e-mail contained a "fair and equitable" proposal, especially in light of the circuit court's subsequent award of over twice that amount. We find no error.

At the damages hearing, McCall objected to the admission of the e-mail because "this offer was not from IKON ... [but] was from another party altogether." When asked whether the basis of his objection was relevance, McCall's attorney stated it was, and that he was "objecting to this as being relevant." Counsel for IKON countered that Babcock worked for IKON at the time and that the e-mail denotes "cesc/IKON Education." IKON further argued the document was relevant as to the issue of McCall's failure to mitigate his damages.

The admission or exclusion of evidence is addressed to the sound discretion of the trial judge, whose decision will not be overturned absent an abuse of discretion. *Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 567, 658 S.E.2d 80, 92 (2008). Generally, all relevant evidence is admissible. Rule 402, SCRE. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401, SCRE.

Here, McCall's sole objection raised to admission of the e-mail at the damages hearing was that it was not relevant because it was an "offer" from another party and not from IKON. Thus, this is the only argument on this issue preserved

for review. *See Durham v. Vinson*, 360 S.C. 639, 653–54, 602 S.E.2d 760, 767 (2004) (holding to preserve an issue for appellate review, the issue must have been raised to and ruled upon by trial court, and a party may not argue one ground for objection at trial and another ground on appeal). McCall admitted at the hearing that he was aware of two or three other courses available in the area in January 2002 that were sufficient for him to obtain the certification he sought and were less expensive, yet he did not enroll in any of the other available computer classes, claiming a lack of funds created by the actions of IKON. Whether it came from IKON or from the entity that acquired IKON, the e-mail offer of a refund only twenty-two days after CESC ceased providing classes in the Greenville area is clearly relevant to whether McCall suffered from a lack of funds that prohibited him from enroll-ment in the comparable computer classes and whether McCall attempted to mitigate his alleged damages. Accordingly, we find no error.

## C. Mitigation of Damages

McCall next argues there is evidence he mitigated his damages. He asserts that he quickly sought employment after the computer classes were cancelled, obtaining a job at Schneider after a short period of time, and further sought to mitigate his damages by entering the Ph.D. program, but these efforts failed because Clemson University was unable to fund the program. McCall argues the circuit court's finding that he should have used the settlement proceeds to enroll into another local computer program amounted to speculation and there was no evidence of any local computer programs which would enable him to obtain Microsoft Certified Systems Engineer certification. He maintains "[t]here is ample evi-dence that [he] acted reasonably in regard to his decision to use his forestry education once he had been deprived of his opportunity to pursue a certified Microsoft Systems Engineer career."

The bulk of the damages sought by McCall center around his claim of loss of earning capacity based on the failure of IKON to provide the agreed to computer training and McCall's lack of available funds to continue down a computer career path. The circuit court found McCall's expla-

nation for his failure to accept the refund offer in January 2002, because he "never saw a check," to lack credibility. The court further found McCall's testimony that it would have been irresponsible for him to quit his job with Schneider to go back to school after receiving the CESC settlement money because he had a son to care for at that time was also not credible in light of the fact that McCall ultimately quit this job to go back to school for his Ph.D. less than two months after his son was born. The court determined McCall had funds available to pursue his education in computers, but elected not to do so. Accordingly, the court held McCall failed to mitigate his damages.

There is evidence of record that in January 2002, McCall was offered a refund of the tuition and, though he was aware of two or three other less expensive courses available in the area that were sufficient for him to obtain the certification he sought, he failed to enroll in any of these other available computer classes. Further, there is evidence that McCall received a settlement of twice the tuition amount from CESC in May 2003, and therefore had funds available with which he could have enrolled in computer classes at that time. As noted, questions of credibility and the weight to be accorded evidence are exclusively with the trial court. There is more than sufficient evidence of record that reasonably supports the circuit court's findings in this regard.

McCall further asserts the trial court improperly used the settlement proceeds twice because it used the proceeds "as a mitigating factor to reduce [McCall's] damages" and then used the settlement proceeds "as a direct set-off." He asserts the proceeds could be used as a mitigating factor or an off-set, but not both. We do not follow McCall's logic. McCall cites no law or rule that prohibits the circuit court from considering receipt of the settlement money as a factor in determining mitigation and as a set-off against his total damages. Further, the court did not use the settlement proceeds to *reduce* McCall's damages. Rather, the court simply considered McCall's failure to use the available settlement proceeds as one of the factors in determining whether he mitigated his alleged damages. Thereafter, the court found McCall suffered total damages of $24,379.33 and concluded IKON was entitled to a credit of the $25,000 paid by CESC against its judgment pursuant to South Carolina Code Ann. Section 32–9–10 *et seq.,*

a determination that, in and of itself, McCall does not challenge. There is simply no logical reason the court could not both consider the availability of these funds, paid by IKON's successor entity, in determining the ultimate damages to which McCall was entitled and award IKON a credit for the settlement funds paid toward those damages.

### D. Evidence of an Asset Purchase Agreement

Finally, McCall argues the circuit court erred in asking for the additional evidence of a copy of the asset purchase agreement between IKON and CESC following the conclusion of the damages hearing. He argues there was no testimony presented concerning the document, he was not afforded an opportunity to address this document, and no issue concerning this document was raised before the court.

There is no asset purchase agreement document in the record before this court. Further, there is nothing in the record to show the circuit court asked for such a document, nor any indication McCall objected to the document as he claims. Neither is there any evidence the circuit court considered such a document in its ruling. In short, the record is devoid of any evidence whatsoever concerning the document of which McCall complains. As the appellant, McCall bears the burden of providing this court with a record sufficient to allow appellate review. *See Harkins v. Greenville County*, 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000) (noting the appellant has the burden of presenting an adequate record on appeal); *see also* Rule 210(h), SCACR ("Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal."). Because McCall did not provide this court with an adequate record to consider this argument, we affirm the trial court on this issue as well.

### CONCLUSION

For the foregoing reasons, the trial court's order finding McCall entitled to damages of $24,379.33 on his breach of contract action against IKON is

**AFFIRMED.**

ANDERSON and THOMAS, JJ., concur.