748 S.E.2d 801

**RITTER AND ASSOCIATES, INC., Respondent/Appellant,**

v.

**BUCHANAN VOLKSWAGEN, INC. and David Buchanan, Appellants/Respondents.**

Appellate Case No. 2011–198469.

No. 5137.

Court of Appeals of South Carolina.

Heard Dec. 12, 2012.

Decided May 22, 2013.

Withdrawn, Substituted, and Refiled Aug. 28, 2013.

Steven L. Smith, of Smith Closser PA, of Charleston, for Appellants/Respondents.

Robert B. Varnado, of Brown & Varnado LLC, of Mount Pleasant, for Respondent/Appellant.

WILLIAMS, J.

Ritter and Associates, Inc. ("Ritter") brought this claim to recover payment for twenty vehicles sold to Buchanan Volkswagen, Inc. ("BVW") through BVW's agent, Todd Taylor ("Taylor"). Taylor, who purchased vehicles on behalf of various parties at a used automobile auction in Florida, conducted a check kiting scheme that defrauded several entities within the automobile dealership industry, including BVW and Ritter. BVW appeals the special referee's order finding for Ritter on its breach of contract cause of action, arguing that Taylor was not acting exclusively as BVW's agent when he purchased the vehicles and that Ritter's own negligence was the proximate cause of Ritter's damages. Ritter cross-appeals, arguing that the special referee erred in finding that the South Carolina Motor Vehicle Dealer's Act did not apply to its causes of action. We affirm.

## FACTS / PROCEDURAL HISTORY

Ritter is a Florida corporation that operates as a licensed used car wholesaler. Ritter's offices are in close proximity to the Florida Auto Auction of Orlando ("FAAO"). The FAAO is a used automobile auction located in Ocoee, Florida, where hundreds of wholesalers and dealers purchase vehicles for resale. The FAAO is not open to the public. In order to be authorized to purchase vehicles at auction, dealers must be registered with the FAAO. In addition to buying vehicles

directly from the auction, participants often conduct "outside" deals between one another. BVW was a South Carolina Subchapter S Corporation that operated a car dealership in Charleston County. David Buchanan ("Buchanan") was its principal shareholder.

In 1993, BVW ceased doing business as a car dealership and remained in existence only to rent out the parcel of real property held by BVW. In 2000, Buchanan was advised that to retain its Subchapter S status, BVW needed to generate more than just "passive" rental income. To remedy this problem, Buchanan entered into a business relationship with one of BVW's former employees, Todd Taylor. In 2000, BVW began operating a wholesale used car dealership whereby Taylor would purchase cars for BVW from the FAAO, and then Taylor would resell those cars on BVW's behalf to other dealers in the Charleston area. To facilitate this arrangement, Buchanan obtained a South Carolina Wholesale Dealer License for BVW from the South Carolina Department of Public Safety. The license listed Taylor as its employee/agent.

Prior to resuming work for BVW, Taylor regularly purchased used vehicles on behalf of a number of automobile dealers in the Charleston area from various sellers at the FAAO. During the time he was working for BVW, Taylor continued to act on behalf of other dealers to purchase automobiles from sellers at the FAAO.

Because Taylor was not authorized to purchase directly from the FAAO, he maintained relationships with several dealers who were authorized to purchase vehicles at auction. These authorized dealers would purchase vehicles from the FAAO at Taylor's instruction; these dealers would then resell the vehicles to Taylor in "outside" deals. Ritter was an authorized dealer with whom Taylor frequently transacted. Taylor would pay Ritter for vehicles with checks from various bank accounts, including accounts held by BVW and a separate company owned by Taylor. Over time, Taylor and Ritter's relationship became more familiar and, consequently, more casual. As a result of this increased familiarity, Ritter allowed Taylor to directly deposit checks into Ritter's account

to serve as payment for vehicles sold to Taylor in the outside deals.

Beginning in February 2003, Taylor used this ability to deposit checks to initiate an elaborate check kiting scheme, which involved the checking accounts of BVW, Ritter, a separate company owned by Taylor, and at least one other dealer in the Charleston area, Cumbee Chevrolet ("Cumbee"). During the duration of Taylor's kiting scheme, Ritter sold twenty vehicles to BVW through Taylor.

On February 6, 2004, BVW filed a lawsuit against Taylor and several banks involved in the transactions. Thereafter, on April 5, 2004, Cumbee filed suit against Ritter, BVW, Buchanan, Taylor, and several banks involved in the transactions. These two suits were consolidated and, following this consolidation, Ritter cross-claimed against BVW and Buchanan to recover payment for the twenty unpaid vehicles sold to BVW through Taylor.

All claims were resolved, except the cross-claims between Ritter, BVW, and Buchanan. Ritter brought claims against BVW for breach of contract, negligence, negligent supervision, and violation of the South Carolina Dealer's Act [1] ("Dealer's Act"). BVW brought counterclaims against Ritter for negligence per se, negligence, civil conspiracy, and aiding and abetting. The case was ultimately referred to William L. Howard, as special referee, by a consent order signed by the Honorable R. Markley Dennis, Jr., on June 25, 2010. The case was tried without a jury on January 24–26, 2011 and February 10, 2011.

On May 19, 2011, the special referee issued an order granting judgment in favor of Ritter on its breach of contract claim and awarding Ritter $434,000.00 in damages and $280,286.71 in prejudgment interest. In this order, the special referee concluded that Ritter's allegations of negligence and negligent supervision were merely examples of the nonperformance of the contractual obligations between the parties, and therefore, granted judgment in favor of BVW on these causes of action. In addition, the special referee ruled that the Dealer's Act did not apply to the business dealings be-

---

1. *See* S.C.Code Ann. §§ 56–15–10 to –600 (Supp.2012).

tween Ritter and BVW and granted judgment in favor of BVW on that cause of action. Finally, the special referee granted judgment for Ritter with regard to BVW's counterclaims for negligence, negligence per se, and civil conspiracy.

## STANDARD OF REVIEW

"An action for breach of contract seeking money damages is an action at law." *McCall v. IKON,* 380 S.C. 649, 658, 670 S.E.2d 695, 700 (Ct.App.2008). "An action in tort for damages is an action at law." *Solley v. Navy Fed. Credit Union, Inc.,* 397 S.C. 192, 202, 723 S.E.2d 597, 602 (Ct.App. 2012). "[W]hen reviewing an action at law, on appeal of a case tried without a jury, the appellate court's jurisdiction is limited to correction of errors at law, and the appellate court will not disturb the [special referee]'s findings of fact as long as they are reasonably supported by the evidence." *Mazloom v. Mazloom,* 382 S.C. 307, 316, 675 S.E.2d 746, 751 (Ct.App. 2009).

## LAW/ANALYSIS

### I. BVW's Appeal

On appeal, BVW argues the special referee erred in three respects: (1) in concluding that Taylor was an exclusive agent of BVW; (2) in failing to apportion liability for damages to Ritter due to its own negligence; and (3) in concluding that Ritter's accounting expert demonstrated a nexus between Ritter's damages and the specific vehicles for which this suit was brought. We address each argument in turn.

### A. Exclusivity of Taylor's Agency

BVW argues that the special referee erred in concluding that Taylor was exclusively an agent of BVW and in failing to consider agency relationships that Taylor had with others. We disagree.

In his order, the special referee found that "Taylor acted on behalf of, and as the agent of BVW throughout the dealings with Ritter." The special referee did not find that Taylor was an exclusive agent of BVW and did not make any findings related to Taylor's agency relationship with other dealers.

BVW argues that the special referee "at least impliedly made" a finding that Taylor was exclusively BVW's agent due to the special referee's holding that BVW was liable for the contracts formed by Taylor. BVW argues that because Taylor acted on behalf of multiple dealerships when transacting at the FAAO, the contracts Taylor signed could have been intended for other dealerships. BVW's position is that "[t]he finding of liability [under the breach of contract claim brought by Ritter] rests not on the existence of an agency, but on the exclusivity of that agency." We disagree.

■■ Generally, "[a]gency is a question of fact." *Gathers v. Harris Teeter Supermarket*, 282 S.C. 220, 226, 317 S.E.2d 748, 752 (Ct.App.1984). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). We believe there is evidence in the record that shows Taylor was BVW's agent and had authority to bind BVW in contract. *See Charleston, S.C. Registry for Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP*, 359 S.C. 635, 642, 598 S.E.2d 717, 721 (Ct.App.2004) ("[A]ctual authority is that which is expressly conferred upon the agent by the principal."). As noted in the special referee's order, Buchanan specifically testified at the hearing that Taylor had the power to purchase vehicles, sign contracts, and issue checks on behalf of BVW. In addition, the contracts for all twenty vehicles identify BVW as the "Buyer (Transferee)" and contain Taylor's signature on the signature line labeled "Transferee's Signature—Buyer." Because Taylor had undisputed authority to enter into contracts on behalf of BVW at the time Ritter sold these vehicles to BVW, Taylor bound BVW in those contacts. Taylor's relationship with other parties does not affect the validity of these contracts. Additionally, we find nothing in the record indicating that Taylor intended to enter into the purchase agreements listing BVW as the "Buyer (Transferee)" on behalf of some other principal, despite BVW's claims to the contrary.

Based on the foregoing, we find that the special referee properly found that an agency relationship existed between Taylor and BVW. Further, we find that Taylor's agency

relationships with other dealerships are immaterial as to whether the contracts signed by Taylor on behalf of BVW are binding. Accordingly, we affirm on this issue.

## B. Failure to Apportion Liability for Ritter's Negligent Conduct

■ BVW additionally argues that the special referee erred in failing to apportion liability to Ritter based upon Ritter's negligent business practices in dealing with Taylor. We disagree.

BVW argues Ritter negligently conducted business with Taylor and that "[e]ven though the basis for the award sounds in contract, the negligence on Ritter's part can serve to mitigate or even entirely subsume the amount of the award." BVW argues that, under the doctrine of comparative negligence, Ritter's damages should be reduced based on the amount of fault attributable to Ritter's action or inaction.

■ However, under South Carolina law, the doctrine of comparative negligence is only applicable to cases alleging negligence as a cause of action. *See Berberich v. Jack*, 392 S.C. 278, 286, 709 S.E.2d 607, 611 (2011) ("[A] plaintiff *in a negligence action* may recover damages if his or her negligence is not greater than that of the defendant. The amount of the plaintiff's recovery shall be reduced in proportion to the amount of his or her negligence." (emphasis added) (internal quotation marks and citations omitted)). In the current case, comparative negligence is inapplicable because the special referee found for Ritter under a breach of contract cause of action. Thus, the special referee was correct in not reducing the award to Ritter. Accordingly, we affirm on this issue.

## C. Failure to Establish Damages

■ In its final argument, BVW argues the special referee erred in concluding Ritter presented adequate evidence that Ritter had not received payment for the twenty cars that form the basis for Ritter's damages. We disagree.

BVW specifically argues that the testimony of Ellison Thomas ("Thomas"), Ritter's forensic accounting expert witness, was inadequate to establish that Ritter had not received payment for the twenty cars. BVW contends that neither

Thomas nor Ritter can trace with any degree of specificity the unpaid vehicles purchased by BVW from Ritter. BVW maintains that Thomas assigned responsibility for payment for these vehicles to BVW simply because "it's the end of a kiting scheme, and somebody had to get burned" and this unfounded assertion should not form the basis for a damages award against BVW.

"In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes,* 266 S.C. at 86, 221 S.E.2d at 775.

Evidence in the record supports the special referee's finding that Ritter had not been paid for the twenty vehicles. Specifically, the special referee found, based upon testimony from Ritter and Thomas, that "between the dates of August 12, 2003 and September 30, 2003, Ritter and BVW, acting through Taylor, contracted for the sale by Ritter to Taylor of twenty motor vehicles" and "that Ritter has not been paid for those cars." For example, Thomas testified, "I reviewed the records, and I reviewed the way [Ritter] tracked things and through process of elimination, these are the vehicles that [Ritter] purchased and didn't get paid for." Additionally, Robert Ritter described the contents of an exhibit that listed the twenty vehicles forming the basis for the actual damages award as "the vehicles that I sold to Buchanan Volkswagen that I was never paid for." Accordingly, we find that there is ample testimony in the record from Robert Ritter and Thomas to support the special referee's finding that Ritter was not paid for these vehicles; thus, we affirm on this issue.

## II. Ritter's Arguments

On cross-appeal, Ritter argues that the special referee erred in three respects: (1) in determining the Dealer's Act did not apply to the business dealings between BVW and Ritter; (2) in declining to address Ritter's statute of limitations defense; and (3) in rejecting BVW's assertion that Florida's "open titles" statute was a ground for voiding the sales contracts between the parties without first expressly determining that

the statute relied upon did not apply to the facts of this case. We address each argument in turn.

## A. Dealer's Act

■  Ritter argues that the special referee erred in holding that the Dealer's Act was inapplicable to Ritter and BVW's business dealings.  It argues that sufficient purposeful contacts within South Carolina existed for the Dealer's Act to apply.  We disagree.

The Dealer's Act prohibits motor vehicle dealers and manufacturers from participating in unfair methods of competition and deceptive trade practices.  In particular, subsection 56–15–40(1) of the South Carolina Code (Supp.2012) declares it unlawful "for any ... wholesaler ... or motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public."  The Dealer's Act applies to "[a]ny person who engages directly or indirectly in purposeful contacts within [South Carolina] in connection with the offering or advertising for sale [of a motor vehicle] or has business dealings with respect to a motor vehicle within [South Carolina]."  S.C.Code Ann. § 56–15–20 (Supp.2012).  The Dealer's Act provides "[i]n addition to temporary or permanent injunctive relief ..., any person who shall be injured in his business or property by reason of anything forbidden in [the Dealer's Act] may sue therefor in the court of common pleas and shall recover double the actual damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  S.C.Code Ann. § 56–15–110(1) (Supp.2012).

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Sloan v. Hardee,* 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007).  "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.* In interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id.* at 499, 640 S.E.2d at 459.  Further, "the statute must be read as a whole and sections which are part of the same general statutory law

must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006).

The special referee found the clear language of the Dealer's Act requires either purposeful contacts within South Carolina or business dealings with respect to a motor vehicle within South Carolina. Based on the finding that the entirety of the business dealings occurred and were consummated in Florida, the special referee held that the Dealer's Act would not apply to the business dealings between Ritter and BVW.

Ritter now argues that "there need only be a sufficient nexus to South Carolina entities or South Carolina vehicles for the [Dealer's] Act to apply." Ritter argues that this nexus was established because: (1) BVW was a South Carolina corporation; (2) the parties understood that BVW intended to bring the vehicles back to South Carolina for resale to other dealerships; (3) BVW used checks issued by South Carolina banks to pay for the vehicles; and (4) South Carolina body shops performed work on the vehicles once they were transported from Florida. We find these arguments unpersuasive.

Section 56–15–20 creates two scenarios when the Dealer's Act will apply: (1) when a "person ... engages directly or indirectly in purposeful contacts within [South Carolina] in connection with the offering or advertising for sale" of a motor vehicle; and (2) when a person has "business dealings with respect to a motor vehicle within [South Carolina]." The facts of this case do not fit within either of these scenarios. These vehicles were selected by Taylor from the FAAO, which is located in Florida; the contracts and bills of sale were written and signed in Florida; payment was surrendered by Taylor to Ritter in Florida; and, finally, Ritter delivered possession of the vehicles to Taylor in Florida. Therefore, any purposeful contacts within South Carolina which would put these dealings under the first scenario contemplated by section 56–15–20 would not have occurred until after the business dealings between Ritter and BVW were concluded. Further, at the time the business dealings between the parties occurred, the motor vehicles were in Florida. Therefore, the second scenario contemplated by section 56–15–20 is also inapplicable.

We find that BVW's status as a South Carolina corporation and South Carolina banks providing the checks used to complete these transactions does not amount to "engaging . . . in purposeful contacts within [South Carolina] in connection with the offering or advertising for sale" of a motor vehicle. S.C.Code Ann. § 56–15–20 (Supp.2012). Further, we find that BVW's intention to transfer these vehicles back to South Carolina after completion of the sale fails to create a sufficient purposeful contact within South Carolina that would render the Dealer's Act applicable.

Because the entirety of the business dealings between Ritter and BVW occurred in Florida, we hold the special referee properly decided the Dealer's Act does not apply. Thus, we affirm on this issue.

## B. Ritter's Additional Arguments

In addition to its argument regarding the Dealer's Act, Ritter makes two additional arguments relating to the special referee's treatment of BVW's counterclaims against Ritter. First, Ritter argues the special referee erred in declining to address Ritter's statute of limitations defense after concluding that BVW failed to prove the merits of its counterclaims. Secondly, Ritter argues the special referee erred in rejecting BVW's assertion that Florida's "open titles" statute was a ground for voiding the sales contracts between the parties without first expressly determining that the statute relied upon did not apply to the present circumstances. We decline to address these arguments.

The special referee found in Ritter's favor with regard to BVW's counterclaims; therefore, Ritter was not aggrieved by the special referee's order with regard to those rulings. *See* Rule 201(b), SCACR ("Only a party aggrieved by an order, judgment, sentence or decision may appeal.").

In its reply brief, Ritter argues these issues are sustaining grounds. As sustaining grounds, Ritter contends it must raise these issues or risk abandoning its claims.[2] While Ritter

---

2. In making this argument, Ritter relies upon *I'On LLC v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000), which holds "a respondent may abandon an additional sustaining ground . . . by failing to raise it in the appellate brief." 338 S.C. at 420, 526 S.E.2d at 723.

656

properly cites the law, BVW has not appealed the special referee's rulings regarding BVW's counterclaims. Because those rulings are not on appeal, the sustaining grounds that further support those rulings need not be considered. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App. 1987) ("[W]hatever doesn't make any difference, doesn't matter."). Accordingly, we decline to address these arguments.

## CONCLUSION

Based on the foregoing, the order of the special referee is **AFFIRMED.**

FEW, C.J., and PIEPER, J., concur.