19813

Furman McQUILLEN et al., Respondents, v. Solon M. DOBBS and
Leroy Gadson, Appellants

(204 S. E. (2d) 732)

*Carl C. Hendricks, Jr., Esq.,* of Beaufort, *for Appellants,*

*J. Thomas Mikell, Esq., of Harvey, Battey, Macloskie & Bethea,* of Beaufort, *for Respondents,*

*Carl C. Hendricks, Jr., Esq.,* of Beaufort, *for Appellants,* in Reply.

April 25, 1974.

LEWIS, Justice.

Plaintiffs Furman and Doris A. McQuillen, husband and wife, with whom plaintiff David Parsons resided, rented a mobile home from the defendant Solon M. Dobbs in August, 1972. The mobile home was destroyed by fire on October 12, 1972. The personal possessions of the plain-

tiffs were destroyed in the fire and each subsequently brought an action against the defendant Dobbs, the owner of the home, and defendant Leroy Gadson, a repairman and agent of Dobbs, to recover their respective losses. The action was based upon allegations that the fire resulted from the negligence of defendants in failing (1) to properly maintain, repair, and light a fuel oil furnace used to heat the home and (2) to provide fire extinguishing equipment. The cases were tried together and resulted in a verdict for the plaintiffs in the total amount of $2,500.00, from which the defendants have appealed.

It is not disputed in this appeal that Dobbs, the owner, owed a duty to properly maintain, repair, and light the fuel oil furnace used in the home rented from him by the plaintiffs; and the sole question for decision is whether the trial judge erred in refusing the timely motions of defendants for a directed verdict upon the ground that there was no evidence to show that the fire and resulting damage was the proximate result of any negligent act on the part of the defendants.

Under settled principles, we must consider the facts, and the reasonable inferences to be drawn therefrom, in the light most favorable to plaintiffs.

Defendant Dobbs owned and operated a grocery store and an adjoining rental trailer or mobile home park. One of these homes was rented and occupied by plaintiffs. The home was heated by a Coleman fuel oil furnace, supplied with fuel oil, by gravity, through a pipeline from an elevated outside tank. Temperature was thermostatically controlled.

Pursuant to his obligation, Dobbs undertook in the early part of October, 1972, with the aid of his employee Gadson to inspect and service the furnace in the home occupied by plaintiffs. The exact date of the initial inspection of the furnace is not shown but, apparently, it took place two or three days before the furnace was actually put in operation.

The inspection revealed that there was a leak in the pipeline through which fuel oil was fed to the furnace. The leak was at a coupling in the line, from which fuel oil would occasionally drop to the ground. It was under the house, five or six feet from the fire area of the furnace, and there is no testimony that any fuel from the leak accumulated on, or came in contact with, any part of the building. While plaintiffs did not know whether this leak was ever repaired, defendants testified that it was stopped before they subsequently started the furnace. One witness, however, testified as to a conversation he had with defendant Dobbs after the fire, from which an inference might reasonably be drawn that the leak had not been repaired.

The only testimony as to the manner in which defendants actually inspected and serviced the furnace came from them. They testified that they checked, in some degree, various switches and controls; cleaned the inside of the fire area, the blower and the lower part of the stovepipe with a vacuum cleaner; and after the furnace was lighted, briefly observed its operation. Their testimony was that, other than the leak in the pipeline, nothing was found wrong with the furnace and it was functioning properly when they left it in operation on October 11, 1972.

However, plaintiff introduced testimony as to, the procedures and steps recommended by the manufacturer for the proper inspection and maintenance of the furnace; and under this testimony, there was a reasonable inference that defendants failed to properly service the furnace, in that they failed to properly inspect for holes or deterioration in the stovepipe, to properly check the oil control devices, and to use the correct procedure in cleaning the various parts.

The furnace was lighted by defendants on the evening of October 11th and the mobile home burned the next day, October 12th, about midday. The plaintiffs Furman McQuillen and David Parsons were members of the Marine Corp and left for duty early on the morning of October

12th. McQuillen left first, between four and four thirty a. m. Before leaving, he noticed that the furnace was a "little warm," but observed nothing to indicate that anything was wrong with its operation. However, when asked if he smelled fuel oil, did state that he detected the odor of "something funny." Plaintiff Parsons went to work later, about 7 a. m. Before he left for work he "felt a little warm" and "turned the thermostat down." He noticed nothing unusual about the operation of the furnace.

The plaintiff, Doris McQuillen, slept until about 11 a. m. on the morning of the fire. When she awoke, she immediately saw smoke in the home. It appeared to her that the smoke was coming from the kitchen area and she went to investigate. When she found that nothing was wrong with the kitchen stove, she immediately went to the store of defendant Dobbs, about 150 feet away, to get his help. She and Dobbs returned to the trailer immediately. When they returned, Dobbs went to the furnace and told her to call the fire department. The firemen did not arrive in time and the mobile home was completely destroyed by fire.

Defendant Dobbs testified that he arrived at the home about 11:30 a. m. When he arrived, he opened the furnace door and could hear the fire "roaring up in the furnace," but saw no flames on the outside. His testimony was: "When I opened the front of the panel door . . . I didn't see no flames. I could hear it roaring, but I could see it smoking . . . Up around the ceiling it was cracking and popping which had already got heated up and the wood was popping."

From the testimony of the defendant Dobbs and that of the plaintiff, Doris McQuillen, it is clear that, when the fire was first discovered, it was burning in the ceiling of the home, with no flames seen under the house or at the floor level.

The nearest fire extinguisher to the mobile home was located in the defendant's store, over 150 feet away. Only

one extinguisher was maintained for the entire park, containing twenty homes. The jury was instructed, without objection, that, under the applicable laws and regulations, the owner or operator of a mobile home park was required to maintain and locate one or more fire extinguishers of a type suitable for flammable liquids or electrical fires so that it would not be necessary to travel more than one hundred (100) feet to reach the nearest extinguisher.

When the defendant Dobbs reached the scene and saw the conditions, he cut the electricity and fuel oil off from the trailer, went to his store, and returned with the fire extinguisher. The flames were then coming out of the wall and it was impossible to extinguish the fire.

Plaintiffs contend that the evidence establishes actionable negligence on the part of the defendants because of their failure (1) to repair the leak in the pipelines through which fuel oil passed to the furnace; (2) to properly inspect the stovepipe for holes; (3) to check the oil control valve to see if it needed adjustment; (4) to use the correct procedure in cleaning various parts of the furnace; and (5) to have available a fire extinguisher within the mobile home or within one hundred (100) feet thereof.

While the issue is close, we think that the trial judge correctly held that there was evidence to sustain the conclusion that the fire in question resulted from the negligent failure of defendants to properly inspect and service the furnace.

The home and furnace were destroyed and there was no direct evidence or expert opinion as to what caused the fire. There was, however, evidence of facts and circumstances from which the inference might be reasonably drawn that, but for the negligence of defendants, the fire would not have occurred. The principles governing the determination of the sufficiency of circumstantial evidence to establish liability were thus stated in *Chaney v. Burgess,* 246 S. C. 261, 143 S. E. (2d) 521:

"While our decisions uniformly state that the so called doctrine of *res ipsa loquitur* does not apply in this State, they have with equal uniformity recognized that negligence may be proved by circumstantial evidence as well as direct evidence. And in determining the sufficiency of circumstantial evidence, the facts and circumstances shown are to be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates. Where circumstantial evidence is relied upon to establish liability, the plaintiff must show such circumstances as would justify the inference that his injuries were due to the negligent act of the defendant, and not leave the question to mere conjecture or speculation."

It is inferable from the testimony of the defendant Dobbs that, when he opened the door of the furnace, the fire was roaring, with the flames going up the stovepipe, "from the bottom all the way up." The fire was burning in the ceiling which, as expressed by Dobbs, "had already got heated up and the wood was popping." The testimony supports the conclusion that the "roaring" fire in the furnace caused the mobile home to burn. The intense fire found in the furnace by Dobbs could have resulted only from an excessive amount of fuel in the fire pot of the furnace, which could only have entered from the outside tank through the pipeline and control devices on the furnace. There was no excessive amount of fuel turned into the furnace. In fact, one of the plaintiffs turned the thermostat down before leaving the home at 7 a.m. The only other way for the excessive fuel to enter the furnace was through a malfunction of the control mechanism.

The record sustains the conclusion that the fire ■■ resulted from a malfunction in the control mechanism of the furnace, which was inspected and serviced in a superficial manner. Defendants should have foreseen that the superficial (negligent) manner in which they inspected and serviced the furnace would probably result

in its malfunction and injury to others. They are chargeable with the natural and probable consequence of their negligent conduct. As stated in *Childers v. Gas Lines, Inc.,* 248 S. C. 316, 149 S. E. (2d) 761:

"The law is well settled that in order to establish liability it is not necessary that the person charged with negligence should have contemplated the particular event which occurred. It is sufficient that he should have foreseen that his negligence would probably cause injury to something or someone. He may be held liable for anything which appears to have been a natural and probable consequence of his negligence."

See also: *Shepherd v. U. S. Fidelity & Guaranty Co.,* 233 S. C. 536, 106 S. E. (2d) 381; *Brock v. Carolina Scenic Stages,* 219 S. C. 360, 65 S. E. (2d) 468; *Joiner v. Fort,* 226 S. C. 249, 84 S. E. (2d) 719.

We think the facts and circumstances give rise to the reasonable inference that the malfunction of the furnace, which caused the fire, could probably have been avoided if defendants had properly inspected and serviced the furnace. The issue was one for the jury to decide and the motion for a directed verdict was properly refused by the trial judge.

Judgment affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.