LAY, Circuit Judge.
On July 14, 1973, a fire originating in the Macks Store in Edgefield, South Carolina, extensively damaged Scavens Men’s Shop located in an adjacent building. As a result, Nicholas J. Scavens brought a diversity action in federal district court seeking to recover his property damage from Macks Stores, Incorporated. Following a two day trial, a jury returned a verdict for the plaintiff in the amount of $21,957.58. The trial judge, however, entered an order granting the defendant’s motion for judgment notwithstanding the verdict, ruling that there was not sufficient evidence of negligence or proximate cause to support the jury’s verdict. Scavens appeals the judgment. We reverse.
In reviewing a judgment notwithstanding the jury’s verdict we must “view the evidence in the light most favorable to the plaintiff. [The non-moving party] is entitled to the benefit of all inferences which the evidence supports, éven though contrary inferences might reasonably be drawn.” Butler v. O/Y Finnlines, Ltd., 537 F.2d 1205, 1206-07 (4th Cir.), cert. denied, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (1976). See also Mays v. Pioneer Lumber Corp., 502 F.2d 106, 107-08 (4th Cir. 1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975); C. Wright, Law of Federal Courts § 95, at 473-76 (3d ed. 1976).
Macks Store was housed in an “L” shaped building located to the side and along the rear of Scavens Men’s Shop. Two gas-fired heaters, both suspended from the ceiling, were located in a one story section of the building. Several potential sources of ignition of natural gas — the thermostat controlling the store’s air conditioning unit, an electrical switch box and a fluorescent light strip — were also located in the single story section of the building in close proximity to the heaters.
The gas heaters had been installed approximately 26 years before the fire occurred. After their installation, the defendant had been given a set of operating instructions which specified that the following steps should be taken in turning off the heaters:
TO TURN OFF
1. Close Main Shutoff Valve.
2. Close Burner Shutoff Valve.
3. Close Pilot Cock.
* 4. Turn Off Electric Switch If One Is Used In Line To Unit.
* Do Not Turn Off Electric Switch If Unit Heater Fan Is To Be Used For Summer Circulation.
In late May, 1973, the defendant’s store manager, following his ordinary practice, turned off the heaters for the summer. He testified that his customary procedure in doing this was to turn off both the burner shutoff valve and the pilot cock. He stated that he did not close a main shutoff valve. Although the defendant disputed that the burner had a main shutoff valve, testimony of an expert witness and a representative of the heater manufacturer identified a valve in a photograph of the gas line as the main shutoff valve.
Scavens also presented evidence that the heating system had leaked “once in a while.” About eight months before the fire a leak had developed around one of the heater’s pilot lights. The store manager noticed the odor of gas upon entering the store and called a serviceman from South Carolina Gas and Electric Company to repair the leak. No other inspection of the 26 year old heating system was shown to have been undertaken.
On the evening of the fire, July 14, 1973, defendant’s employees remained in the store until 7:00 P.M. when the store was closed.[1] At 7:05 P.M. a policeman turned in a fire alarm. When the fire chief arrived on the scene at 7:08 P.M. he observed that a window near the location of the fire had been blown out, scattering glass across an adjacent street. The fire chief, a man with *872 over 25 years service with the local fire department including five years as chief, testified that:
Until I could secure someone to cut the meter off you could tell there was gas being fed to the fire by the color of the flames and the amount of the flames.
Dr. Eugene C. Woodward, Jr., a consulting engineer specializing in the field of combustion, testified that in his opinion the fire most probably resulted from “[t]he ignition of a combustible mixture of natural gas and air.” There was no source of natural gas in the building other than the pipes leading to the heating units. The evidence also showed the fire which followed the explosion was intensely hot and burned only in the upper part of the single story section of the building, both of which were indicative, according to the testimony, of a natural gas fire.
The direct testimony of the fire chief taken together with Dr. Woodward’s expert testimony and the circumstantial evidence tending to indicate a gas fire had occurred, provided a sufficient factual basis from which the jury could have reasonably concluded that the fire resulted from the ignition of a combustible mixture of air and natural gas. The jury could also have reasonably concluded that any one of the identified potential sources of ignition could have ignited the fire and that, since the store contained no other source of natural gas, a leak in the gas heater line provided the natural gas.[2]
Contrary to the district court’s view, plaintiff did not have the burden to show the exact source of ignition which caused the gas to ignite.[3] The South Carolina Supreme Court in Thorburn v. Spartanburg Theatres, Inc., 263 S.C. 165, 208 S.E.2d 919, 920 (1974), observed that:
The circumstances under which the fire originated and its destructive effect precluded direct proof of its cause, to which plaintiff, an innocent victim of the fire, was a stranger. Of necessity, she had to rest her case on evidence tending to establish the defendant’s negligence in maintaining a defective electrical system, a notorious cause of fire, and evidence tending to disprove any other likely cause. We recognize that “difficulty of proof does not relieve plaintiff of the burden of proof, yet in a situation like this, the Court should take a very liberal view of the testimony.” Brock v. Carolina Scenic Stages & Carolina Cas. Co., 219 S.C. 360, 366, 65 S.E.2d 468, 470 (1951). We are convinced that the evidence warranted a reasonable inference that the fire was caused by defendant’s failure to properly maintain the electrical system, which required submission of the case to *873 the jury, even though the evidence did not exclude all possibility of some other cause of plaintiffs injury.
In another South Carolina decision, decided in the same year as Thorburn, the court noted that:
The home and furnace were destroyed and there was no direct evidence or expert opinion as to what caused the fire. There was, however, evidence of facts and circumstances from which the inference might be reasonably drawn that, but for the negligence of defendants, the fire would not have occurred.
McQuillen v. Dobbs, 262 S.C. 386, 204 S.E.2d 732, 735 (1974).
Viewing the overall evidence in the light most favorable to the plaintiff, we conclude that reasonable men might differ as to whether a reasonably prudent person under similar circumstances would have closed the main shutoff valve or, following the gas leaks, would have had the 26 year old heating system more thoroughly inspected. The jury could have reasonably found that failure to take these steps was a breach of defendant’s duty of care and therefore evidence of negligence. Cf. Hart v. Doe, 261 S.C. 116, 198 S.E.2d 526 (1973).
We conclude that the plaintiff presented sufficient evidence to support a rational belief on the part of the jury that a natural gas fire proximately caused by defendant’s negligence produced the damage to plaintiff’s property.[4] As the Supreme Court observed in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946):
Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentia-ry basis for the jury’s verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court’s function is exhausted when that evidentiary basis becomes apparent, it being immáterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.[5]
See also Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061, 1066 (4th Cir. 1969).
The judgment of the district court is vacated and the cause remanded with directions to enter judgment in accordance with the jury’s verdict.[6]

REVERSED AND REMANDED.

. Employees of Macks Store testified that they did not detect any gas odor in the store. However, the plaintiff introduced evidence from which the jury could have concluded that any gas that had leaked prior to the time the store had closed may have been trapped in a boxed-in area above the heaters and would not have been detectable.

. The defendant contends that a natural gas fire could not have occurred since the gas meter showed no gas use for 2'h months prior to the fire and since tests performed after the fire did not indicate any leaks in the heaters’ gas supply pipes. Records of the South Carolina Electric and Gas Company showed no gas usage by Macks Store after May 3, 1973. However, defendant’s store manager told state fire investigators that he did not shut off the heaters until the end of May. Evidence was presented at trial that tended to show that the use of the pilot light between May 3, 1973, and the end of the month would alone have resulted in enough gas usage to register on the meter. In addition, tests of the meter after the fire failed to show any change on the meter reading despite significant gas flow through the meter during the test. Thus, the jury could have concluded that the meter was malfunctioning.
During the fire the heater closest to the center of the fire fell to the floor but the attached gas lines remained intact. Following the fire, tests of the line showed no leaks in the line. Evidence was, however, submitted at trial which supported the possibility that leaks in the line could have been sealed as a result of expansion of the pipe caused by the fire’s heat or by scale deposits within the pipe which might have been dislodged during the fire. The fact that defendant’s evidence disputes the possibility of plaintiffs claim does not entitle it to a judgment notwithstanding the verdict. The resolution of conflicts in the evidence and the inferences to be drawn from that evidence are jury questions.

. Cf. Cranston Print Works Co. v. Public Serv. Co. of North Carolina, Inc., 291 F.2d 638, 643 (4th Cir. 1961), where this court stated: “It was shown by the evidence that a spark from any of the electric motors on the first floor, an arc from one of these or a lamp, upon being burst by impact, could have ignited the natural gas then present in the boiler house.”

. Although the trial court later granted a judgment notwithstanding the verdict, during the trial Judge Simons commented that in his opinion plaintiff had sufficiently proved that natural gas was the cause of the fire.

. Although Lavender involved only the question of what standard an appellate court should apply in reviewing a jury verdict under the Federal Employers’ Liability Act, 45 U.S.C. § 51, the standard for review adopted by the Court has been utilized in cases involving directed verdicts and judgments notwithstanding a jury’s verdict. C. Wright, Law of Federal Courts § 95, at 475-76 (3d ed. 1976). See also Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061, 1066 (4th Cir. 1969).

. The district court alternatively denied defendant’s motion for new trial. There was no cross-appeal on this ruling.