791 S.E.2d 152

**THE WINTHROP UNIVERSITY TRUSTEES FOR THE STATE of South Carolina, Respondent,**

v.

**PICKENS ROOFING AND SHEET METALS, INC., Appellant.**

Appellate Case No. 2014–000821
Opinion No. 5433
Court of Appeals of South Carolina.
Heard December 8, 2015
Filed August 3, 2016
Rehearing Denied October 21, 2016

144

146

Lyndey Ritz Zwingelberg and Kirby Darr Shealy, III, both of Adams and Reese LLP, of Columbia, for Appellant.

Zachary Mason Jett and Peter W. Vogt, both of Butler Weihmuller Katz Craig, LLP, of Charlotte, for Respondent.

MCDONALD, J.:

In this case arising from an extensive roof fire, a jury awarded the Winthrop University Trustees for the State of South Carolina (Winthrop) $7,223,343.14 in damages against Pickens Roofing and Sheet Metals, Inc. (Pickens). On appeal, Pickens argues the circuit court erred in (1) denying its motion for a new trial absolute based on the court's refusal to strike a juror for cause; (2) denying its directed verdict motion as to liability; (3) failing to properly recharge the jury on proximate cause; (4) bifurcating the liability and damages phases of trial; (5) denying its directed verdict motion as to damages; and (6) failing to adjust the jury's damages verdict to reflect Winthrop's comparative negligence. We affirm.

## FACTS & PROCEDURAL HISTORY

On March 6, 2009, a fire erupted on the roofs of Bancroft Hall and Owens Hall, two buildings on the campus of Winthrop University. Bancroft Hall, a U-shaped building, was originally constructed in 1909; Winthrop built Owens Hall adjacent to Bancroft Hall in 2007. Connecting Bancroft Hall and Owens Hall is a flat roof (the flat roof), which is situated lower than the pitched roofs of the two adjoining buildings.[1]

---

1. The flat roof measures approximately twenty to twenty-five feet long by twelve feet wide on one side and three to four feet wide on the other side.

In 2009, Winthrop sought bids for the Bancroft Hall reroofing project, which involved removing asbestos-containing shingles and updating the roof's appearance to be consistent with that of newly constructed Owens Hall. Winthrop hired Stafford Consulting Engineers (Stafford) to design and prepare specifications for the project. After Winthrop awarded the construction bid to Pickens, Stafford prepared a construction contract, incorporating the specifications into the contract terms. One specification required Pickens to maintain worksite safety precautions and "[c]omply with all applicable laws, ordinances, rules, regulations and orders of any public body having jurisdiction for the safety of persons or property or to protect them from damage, injury or loss."[2] Additionally, the following specification applied to storage areas for work materials: "Prior to starting work, obtain approval from Owner [Winthrop] for locations of work operations at ground level, such as material storage, hoisting, dumping, etc. Restrict work to approved locations." Pursuant to the agreement, Winthrop approved storage of materials in (1) a "lay down" area on the ground in front of Bancroft Hall and (2) a nearby parking lot.

During the week of March 1–5, 2009, a three-man Pickens metal crew installed copper on the dormer windows of the Bancroft Hall roof. No other construction crews worked on Bancroft Hall or Owens Hall that week. The Pickens crew stored some roofing materials on the flat roof and did not remove them when they finished work around 4:00 p.m. on Friday, March 5. The following afternoon, a student noticed smoke emerging from the Owens Hall roof; campus police and the fire department responded to the scene. The fire burned for over twenty-four hours into the early evening of March 7. Despite using a stream of approximately 300 gallons of water per minute, the fire department had difficulty extinguishing the fire within the insulation layer of the Owens Hall roof.

On August 31, 2012, Winthrop filed a complaint against Pickens for (1) breach of contract, (2) breach of implied

---

**2.** The International Fire Code, which includes standards of the National Fire Protection Association (NFPA), is incorporated by reference in South Carolina municipal and county building codes. *See* S.C. Code Ann. § 6–9–50(A) (Supp. 2015). Of importance in this appeal, section 8.3.3 of NFPA 241 prohibits the "yard storage" of combustible materials within thirty feet of a structure during construction.

warranty of workmanship, and (3) negligence. Winthrop alleged that Pickens's storage of combustible construction materials on the flat roof—negligently and in violation of the contract terms—caused its fire-related damages. The case was tried by jury from March 17–21, 2014.

Before trial, the circuit court conducted voir dire of the potential jurors. During the jury selection process, the circuit court asked if any jurors or their family members had worked for or had a business relationship with Winthrop. Juror 25 stated, "I am a student researcher at Winthrop and I do know about this. . . . I was there during the fire, the incident, so I know people who were affected by it." When asked if she could remain impartial despite her experience and relationships, Juror 25 responded, "I could do that. I could do that. That's not a problem. It's just I wanted to say that I knew things that occurred." When asked what specific knowledge she had, Juror 25 responded, "The fire, the incident, things that were said about how it occurred, and so forth." Juror 25 asserted that she could be impartial despite her knowledge of the fire.

The circuit court also asked if any jurors or their family members were Winthrop graduates. Juror 25 stated she was a "recent graduate" but could remain impartial. Additionally, the circuit court asked if any member of the jury pool had heard about the case through media coverage. Juror 25 again responded, noting, "I watched it on the news. I am friends with students who were affected by the fire. They discussed some things that they knew and the school website and then some [of] the professors talked about it, but I don't live on campus so I don't know any specifics, but I have watched it." The circuit court then stated:

> This is very important. . . . Could you put aside anything you may have heard about the case before coming here to court today or anything about it that happened, and render your decision solely on the sworn testimony and evidence that comes in during the trial and the court's instruction on the law that applies and [render] a decision which is fair and impartial to both sides based solely on that evidence that applies. Could you do that or not do that?

Juror 25 responded affirmatively.

The court selected a twenty-person strike panel, which included Juror 25. During a recess before the parties exer-

cised their peremptory strikes, Pickens apparently requested in chambers to strike Juror 25 for cause. Subsequently, Pickens exercised a peremptory strike on Juror 25. After the jury was sworn, Pickens placed its motion to strike Juror 25 for cause on the record, arguing the circuit court should strike Juror 25 because she "is a student at Winthrop University" who indicated she had watched the fire on the news and discussed it with students and faculty. Pickens argued, "I felt that that gave her a perspective on this case that other jurors would not have."

The circuit court denied Pickens's motion, finding that even though Juror 25 was a Winthrop graduate, she did not know any more specifics about the case than other jurors who knew about it had learned through news coverage. The circuit court also emphasized that Juror 25 responded affirmatively that she could be impartial when asked if she could put aside any prior knowledge and decide the case based on the evidence presented at trial. The circuit court noted that this decision differed from its decision to strike another juror who had a connection as a current employee, stating, "You demonstrated no cause to strike her solely [based] on whatever connection she might have known about the case before. . . . In any event, you struck her. You are not prejudiced by that. She is not on the jury obviously."

Before trial, Winthrop filed a motion in limine requesting bifurcation of the trial into liability and damages phases pursuant to Rule 42(b), SCRCP. Winthrop asserted the damages testimony could add several days to the trial and argued there were no genuine issues as to the extent of its damages. Pickens opposed the motion for bifurcation, and the parties discussed bifurcation in chambers. Pickens did not put its arguments in opposition to bifurcation on the record, but stated, "I understand that we had a conversation in chambers with Your Honor. Your Honor[ ] has reached a decision on that. I just wanted to state that we did oppose that for the record."

The circuit court granted the motion to bifurcate, explaining, "I questioned [Winthrop] very closely about that because I was not inclined to bifurcate if . . . the same witnesses [would] testify in the second trial with regard to damages

...." Determining most of the damages witnesses would not be called to testify during the liability phase, the circuit court reasoned,

> It makes sense to me to bifurcate because if the jury were to return a verdict for [Pickens] we wouldn't have to spend all that time with all those witnesses on damages.
>
> On the other hand, if they return a verdict against [Pickens] then with regard to damages the witnesses pretty much are different witnesses. ... So we won't lose any time or have to put witnesses up to testify basically to the same things twice.

During the liability phase of trial, Otis Driggers, a certified fire investigator, was qualified as an expert in the field of fire investigation and cause and origin investigation. He testified he could not locate the source of ignition during his investigation, but determined that the fire originated on the flat roof. The parties also stipulated that the fire originated on the flat roof. In his investigation, Driggers interviewed Randall Pruitt (Randall), Matthew Pruitt (Matthew), and Brandon Lusk (Lusk), three Pickens employees who worked on the Bancroft Hall roof project the week before the fire. According to Driggers, the crew reported leaving materials such as rolls of felt paper, metal louvers, and copper flashing on the flat roof when they left work at 4:00 p.m. on Friday, March 5.

Randall, the sheet metal foreman for the project, supervised Matthew and Lusk. Randall worked under his boss, Bobby Pickens (Bobby), and the project manager, Clint Robinson (Robinson). Randall, Matthew, and Lusk used the flat roof for breaks and for storing materials; Lusk and Matthew recalled going back and forth to the flat roof several times on March 5 to get materials for installing copper on the dormers. Randall testified he only stored copper flashing and other metal materials on the flat roof, and he recalled transporting roofing paper to his truck when he left work. However, in a deposition and interview with Driggers, Randall acknowledged that he left rolls of roofing paper on the flat roof. Lusk recalled storing copper panels, louvers, metal screws, and metal clips on the flat roof, but denied storing felt paper or wooden pallets on the flat roof. When Winthrop impeached Lusk with his post-fire interview with Driggers in which he stated they stored felt paper on the flat roof, Lusk asserted Driggers

misunderstood him about paper storage. Matthew testified they stored shingles, copper, metal pieces, and felt paper on the flat roof. All three Pickens metal workers testified they did not smoke or use any soldering materials the week before the fire.

Robinson testified no contract provision allowed for roof storage of materials and that Pickens did not receive permission from Winthrop to store materials on the flat roof. Robinson recalled Pickens stored sheet metal, metal fasteners, and rolls of felt paper on wooden pallets on the flat roof during his project inspections, but he did not go on the roof the day before the fire. Robinson admitted he did not know about the requirements of NFPA 241 addressing storage of materials and was not familiar with the regulations, even though he acknowledged the contract required Pickens to comply with all applicable codes.

Similarly, Bobby testified that the specifications allowed for storage of materials in only two locations on the ground and that Pickens did not have specific permission from Winthrop for roof storage. Bobby also acknowledged that the South Carolina Fire Code applied to the project, stating he was familiar with material storage rules, although he did not know the particular NFPA standard prohibiting yard storage of materials within thirty feet of a structure. He testified Randall and Robinson should have known the applicable laws for the storage of combustible materials.

Additionally, Stafford engineer Vu Nguyen testified Stafford was not aware that Pickens stored materials on the flat roof and that Pickens did not get approval for this storage space at the pre-construction meeting. Wesley Love, Winthrop's project manager for the Bancroft Hall reroof, testified Pickens did not ask to store material on the flat roof, Winthrop did not provide permission, and Winthrop did not know about the overnight storage of materials. Love also testified he did not monitor Pickens's work for safety, and he did not consider himself a fire prevention program superintendent for the Bancroft Hall roof project, nor did he designate any other Winthrop employee with the title.[3] Walter Hardin, Winthrop's

---

3. Section 7.2 of NFPA 241 provides for the responsibilities of an owner—here, Winthrop—in ensuring fire safety: "The owner shall des-

vice president of facilities management, testified that no Winthrop employee was designated with the title of fire prevention program superintendent. Hardin explained, "That was handled through our specifications through Stafford which puts that responsibility on [Pickens]." Hardin stated Winthrop relied on Pickens to comply with applicable roofing laws.

Finally, Daniel Arnold, who was qualified as an expert in fire safety and fire spread analysis, testified he visited Winthrop three or four days after the fire and interacted with origin investigator Driggers. Arnold found the evidence from the fire was consistent with the conclusion that the fire started on the flat roof between Bancroft Hall and Owens Hall. Arnold testified about pictures depicting the height the flames reached, opining that the flame height demonstrated that the fire spread from the flat roof to the pitched roofs. According to Arnold, the flames could not have reached the height of the pitched roofs without the presence of combustible materials on the flat roof. Arnold maintained it was possible to analyze how the fire spread without knowing the ignition source of the fire. He explained that a fire would have self-extinguished on the flat roof and would not have spread if other combustible materials were not stored on the roof because the roof by itself was designed to withstand the spread of fire. Arnold opined to a reasonable degree of engineering certainty that the fire would not have spread from the flat roof to the adjoining pitched roofs but for the presence of combustible materials. Arnold also testified that the International Fire Code and NFPA 241 were adopted in the South Carolina Code; the NFPA provided guidelines for minimizing fire damage during construction or renovation projects and contained a specific provision restricting the storage of combustible materials within thirty feet of a construction project. He confirmed that roofing paper and wooden pallets were combustible materials, and that any materials stored on the flat roof would have been less than thirty feet from the Bancroft Hall construction project.

After Winthrop closed its case, Pickens moved for a directed verdict on the issue of liability, arguing Winthrop failed to

ignate a person who shall be responsible for the fire prevention program and who shall insure that it is carried out to completion."

prove causation. Specifically, Pickens argued Winthrop introduced no evidence of how the fire began. Pickens claimed that Winthrop relied on a "spread theory" of liability to prove its case, which is not recognized in South Carolina. Because Winthrop failed to provide evidence that the fire would not have occurred but for Pickens's actions, Pickens argued that Winthrop failed to meet its burden of proof as a matter of law. Pickens further contended that it was unforeseeable that the storage of materials that would be installed on the roof would cause a fire because they were no more combustible than the roof itself or other building components.

The circuit court denied the directed verdict motion, reasoning that there was evidence from which the jury could find Pickens's negligence or breach of contract proximately caused Winthrop's damages. The circuit court further held there was evidence from which the jury could find the fire would not have caused such extensive damages but for the presence of combustibles. Initially, the circuit court stated this was "an issue of novel impression probably in South Carolina," and the case was not a "spread theory" liability case because it involved a contract for a worksite and a statutory duty, not the common law duty of a landowner to prevent the foreseeable spread of fire to neighboring landowners. The circuit court further found the ignition source insignificant because the fire started on the flat roof, the statutes were designed to prevent the spread of fire by prohibiting the storage of combustible materials in certain areas near construction sites, and there was evidence from which a jury could find the combustible materials caused most of the damage because the expert testified the fire would not have spread from the flat roof but for the presence of combustible materials.

After closing arguments as to liability, the circuit court charged the jury on the applicable law. As part of its charge, the circuit court instructed the jury on the definition of proximate cause, foreseeability, and direct cause:

> Proximate cause requires proof of both causation [in] fact and legal cause. Causation [in] fact is proved by establishing the plaintiff's damages would not have occurred but for the defendant's negligence. Legal cause is proved by establishing foreseeability. The touchstone of proximate cause in South Carolina is foreseeability. That is the foreseeability of

some damage from a negligent act or omission is a prerequisite to it being a proximate cause of the damage for which recovery is sought. The test for foreseeability is whether some damage to another is the natural and probable consequence of the complained of act. A defendant may be held for anything which appears to have been a natural and probable consequence of its negligence. For an act to be [a] proximate cause of damages[,] the damages must be a foreseeable consequence of the act. Foreseeability is not determined from hindsight, but rather from the defendant's [perspective] at the time of the complained of act. The law requires only reasonable foresight. When the damages complained of are not reasonably foreseeable in the exercise of due care[,] there is no liability.

After some deliberation, the jury sent the circuit court a note requesting to be recharged on the "definition of proximate cause." The circuit court gave the following recharge on proximate cause, which repeated a portion of its earlier charge:

Now, as to proximate cause, I charged you previously that even if you find that the plaintiff has proved the defendant to have been negligent they would not be entitled to a verdict unless you further found that the defendant's negligence was the proximate cause of the plaintiff's injuries. Proximate cause does not mean the soul [sic] cause. The defendant's conduct can be a proximate cause if it was at least one of the direct concurring causes of the injury. The law defines proximate cause to be something that produces a natural chain of events which in the end brings about the injury ... or damage. In other words proximate cause is a direct cause without which the damage would not have occurred. Okay. Anything else that you need while we are out?

The foreperson replied, "No, that answers it."

Pickens objected, arguing the circuit court erred in failing to include a discussion of foreseeability in the recharge on proximate cause. The circuit court responded the jury "didn't ask for that" and explained that because the jury asked for a definition of proximate cause, it did not complicate the definition by including foreseeability. The circuit court also stated, "They heard it all the first time. They asked me to [define]

proximate cause and when I finished reading the forelady was shaking her head yes, so I figured that is all they want. I asked do you want any more than that."

The jury found against Pickens on both the breach of contract and negligence causes of action. The jury also determined that Winthrop was forty percent comparatively negligent. Pickens moved for judgment notwithstanding the verdict (JNOV), arguing again that the case should not have been submitted to the jury because Winthrop did not present any evidence on the issue of causation. The circuit denied the motion.

The trial continued into the damages phase. Six witnesses testified about the fire and water damages resulting from the fire as well as the payments to contractors completing the repairs.[4] Pickens did not present any evidence as to damages but again moved for a directed verdict, arguing Winthrop failed to prove how its breach of duty made the damages worse. Pickens argued the evidence showed only that Pickens caused the fire to spread, and Winthrop failed to connect Pickens's actions to the damages. The circuit court denied the directed verdict motion, ruling that evidence existed from which the jury could determine that Pickens's actions caused all of the damages. The court based its reasoning on the testimony that the fire would have been contained in the flat roof area but for the improper combustible material storage and the testimony that substantial damages resulted from the firefighters' inability to extinguish the fire after it spread.

The jury returned a damages verdict in the amount of $7,223,343.14. Pickens raised several post-trial motions. Pickens again moved for JNOV, asserting Winthrop failed to provide adequate proof of the cause of the fire during the liability phase. Pickens also renewed its directed verdict motion as to damages, arguing Winthrop failed to prove which damages were caused by the spread of the fire. Additionally, Pickens moved for a new trial absolute based on the circuit court's error in bifurcating the trial, arguing it was inappropriate for the jury to consider proximate cause and damages separately. Pickens also moved for a new trial absolute based

---

4. Winthrop also admitted into evidence a binder documenting its specific damages by category.

on the denial of its motion to strike Juror 25 for cause. In the alternative, Pickens requested that the circuit court enter a judgment governed by the jury's comparative negligence determination, advancing the theory that the breach of duty supporting the negligence verdict was the same as that existing in the contract. Thus, it was proper for the court to apportion comparative negligence under both the negligence and breach of contract causes of action.

The circuit court denied the motion for a new trial absolute on the juror issue, explaining that the juror did not have a close connection that required it to strike her for cause and that Pickens failed to show prejudice because it struck the juror with a peremptory strike. The circuit court found the bifurcation proper, denied Pickens's JNOV motions, and determined Winthrop had a right to elect its remedy. Winthrop elected to recover for breach of contract, and the circuit court entered judgment in the amount of $7,223,343.14.

## ISSUES ON APPEAL

I. Did the circuit court err in denying Pickens's motion for a new trial based on the court's refusal to strike Juror 25 for cause?

II. Did the circuit court err in denying Pickens's directed verdict motion as to liability because Winthrop failed to present evidence of causation?

III. Did the circuit court err in failing to repeat a jury charge on foreseeability following the jury's request for additional instruction on proximate cause?

IV. Did the circuit court err in bifurcating the liability and damages phases of the trial?

V. Did the circuit court err in denying Pickens's directed verdict motion as to damages because Winthrop failed to present evidence establishing Pickens's conduct worsened the damages resulting from the fire?

VI. Did the circuit court err in failing to adjust the jury's damages verdict according to its comparative negligence finding?

## ANALYSIS

### I. Juror Strike

Pickens argues the circuit court erred in denying its motion for a new trial based on the court's refusal to strike Juror 25 for cause. Specifically, Pickens asserts the circuit court should have struck Juror 25 for cause—despite her statement that she could remain impartial—because she was a "student researcher" and a "recent graduate" of Winthrop who knew about the fire and knew people affected by the fire. Pickens argues the failure to strike Juror 25 mandated a new trial because Pickens did not have a panel of impartial jurors and was forced to use a peremptory strike on a biased juror. We disagree.

"A litigant's right to an impartial jury is a fundamental principle of our legal system." *Burke v. AnMed Health*, 393 S.C. 48, 52, 710 S.E.2d 84, 86 (Ct. App. 2011). "[I]n all civil cases any party shall have the right to demand a panel of twenty competent and impartial jurors from which to strike a jury." S.C. Code Ann. § 14–7–1050 (Supp. 2015). "To safeguard this right, prospective jurors must be excused for cause when ... the [circuit] court determines that the juror cannot be fair and impartial." *Burke*, 393 S.C. at 53, 710 S.E.2d at 86. A court should disqualify a juror "[i]f it appears to the court that the juror is not indifferent in the cause." S.C. Code Ann. § 14–7–1020 (Supp. 2015). "The decision [to disqualify a juror] is within the sound discretion of the [circuit court]." *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 125, 341 S.E.2d 622, 624 (1986).

In *Abofreka*, our supreme court found that a prior business relationship between a juror and a party does not disqualify the juror as a matter of law. *Id.* at 125, 341 S.E.2d at 624. Thus, the circuit court did not abuse its discretion in failing to disqualify challenged jurors who had been patients of Abofreka because the jurors stated they could be fair to both sides. *Id.*

In *Hollins v. Wal–Mart Stores, Inc.*, the circuit court denied Hollins's request to strike for cause a juror whose brother worked at the Wal–Mart where the incident occurred. 381 S.C. 245, 248–49, 672 S.E.2d 805, 806 (Ct. App. 2008). This court held that the circuit court did not abuse its discretion in

refusing to strike the juror because Hollins had the opportunity to fully question the juror, who responded that she had no knowledge of the matter, had not discussed it with her brother, and could be fair and impartial. *Id.* at 252, 672 S.E.2d at 808.

■ We hold that the circuit court did not abuse its discretion in failing to strike Juror 25 for cause. Initially, we find that Pickens's argument that the trial court erred in refusing to strike Juror 25 for cause because she was a "student researcher" is unpreserved because it was not specifically raised to and ruled on by the trial court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("[A]n objection must be sufficiently specific to inform the [circuit] court of the point being urged by the objector."). As to Pickens's preserved objections to Juror 25, we do not find that Juror 25's status as a Winthrop graduate required her removal because she stated the relationship would not interfere with her ability to remain impartial. *See Abofreka*, 288 S.C. at 125, 341 S.E.2d at 624. Although Juror 25 had been on campus when the fire occurred and knew people affected by it, she did not appear to have any special knowledge about the fire, and she affirmed that she could decide the case impartially based upon the evidence presented at trial. Based on her responses to the voir dire questions, we cannot say the circuit court abused its discretion in refusing to strike this juror for cause. *See Burke*, 393 S.C. at 53, 710 S.E.2d at 86 ("[P]rospective jurors must be excused for cause when ... the [circuit] court determines that the juror cannot be fair and impartial.").

■ Moreover, as Juror 25 was not empaneled, Pickens did not suffer prejudice from any error in failing to strike the juror. *See Wilson v. Childs*, 315 S.C. 431, 439, 434 S.E.2d 286, 291 (Ct. App. 1993) ("There is no reversible error in the impaneling of a jury unless it appears that the objecting party was prejudiced."); *Moore v. Jenkins*, 304 S.C. 544, 547, 405 S.E.2d 833, 835 (1991) ("[W]ith regard to errors in the empaneling of juries, this Court has previously stated in reviewing such errors that, 'irregularities in the empaneling of the jury will not constitute reversible error unless it affirmatively appears that the objecting party was prejudiced thereby.'")

(quoting *S. Welding Works, Inc. v. K & S Constr. Co.*, 286 S.C. 158, 162, 332 S.E.2d 102, 105 (Ct. App. 1985))).

## II. Directed Verdict—Liability

Pickens next argues that the circuit court erred in denying its directed verdict motion during the trial's liability phase because Winthrop failed to present evidence of causation. Specifically, Pickens asserts Winthrop's causes of action fail as a matter of law because it could not prove, even with circumstantial evidence, that Pickens caused the fire to ignite. Pickens claims Winthrop relied on a "spread theory" of liability to support causation because it had no evidence of an ignition source, noting South Carolina has never recognized liability under a "spread theory." Further, Pickens asserts Winthrop failed to prove causation because "its storage of the very materials that would shortly be installed on the roof of Bancroft Hall does not create a foreseeable risk of fire ignition that is any greater than that borne by the building generally." Pickens contends that the absence of foreseeability is fatal to Winthrop's causes of action because foreseeability is crucial in fire cases in which the ignition source is unknown.

 "A motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict." *Gause v. Smithers*, 403 S.C. 140, 149, 742 S.E.2d 644, 649 (2013) (quoting *Welch v. Epstein*, 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct. App. 2000)). "On appeal from a circuit court's denial of a motion for a directed verdict or a JNOV, we apply the same standard as the circuit court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Id.* "We will not reverse the circuit court's ruling on a JNOV motion unless there is no evidence to support the ruling or where the ruling is controlled by an error of law." *Id.* (citing *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434–35, 629 S.E.2d 642, 648 (2006)).

 To recover in breach of contract and negligence actions, a plaintiff must show the defendant's actions caused its damages. *See Maro v. Lewis*, 389 S.C. 216, 222, 697 S.E.2d 684, 688 (Ct. App. 2010) (providing that to establish a breach of contract, the plaintiff must prove the contract, its breach, and the damages that "follow as a natural consequence and a

proximate result of such breach") (quoting *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962)); *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 146, 638 S.E.2d 650, 662 (2006) ("Negligence is not actionable unless it is a proximate cause of the injury."); *Dropkin v. Beachwalk Villas Condo. Ass'n, Inc.*, 373 S.C. 360, 363, 644 S.E.2d 808, 810 (Ct. App. 2007) (providing a plaintiff must prove a causal connection between the defendant's violation of a statute and its injury to be entitled to damages for negligence per se).

■■■■ "Proximate cause requires proof of both causation in fact and legal cause." *Madison*, 371 S.C. at 146, 638 S.E.2d at 662. "Causation in fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence. Legal cause is proved by establishing foreseeability." *Id.* at 147, 638 S.E.2d at 662. "The touchstone of proximate cause is foreseeability which is determined by looking to the natural and probable consequences of the defendant's conduct." *Gause*, 403 S.C. at 150, 742 S.E.2d at 649. "Proximate cause is normally a question of fact for determination by the jury, and may be proved by direct or circumstantial evidence." *Id.* (quoting *Player v. Thompson*, 259 S.C. 600, 606, 193 S.E.2d 531, 533 (1972)).

■■■■ "Where circumstantial evidence is relied upon to establish liability, the plaintiff must show such circumstances as would justify the inference that his injuries were due to the negligent act of the defendant, and not leave the question to mere conjecture or speculation." *McQuillen v. Dobbs*, 262 S.C. 386, 392, 204 S.E.2d 732, 735 (1974) (quoting *Chaney v. Burgess*, 246 S.C. 261, 143 S.E.2d 521 (1965)). In *McQuillen*, after a fire destroyed his personal possessions, a mobile home tenant sued the owner for negligence in failing to properly inspect and maintain a fuel oil furnace. *Id.* at 388, 204 S.E.2d at 735. The owner moved for a directed verdict, arguing the plaintiff provided no evidence that his negligence proximately caused the fire or resulting damages. *Id.* The supreme court affirmed the denial of the directed verdict motion, holding that although no direct evidence showed what caused the fire, the plaintiff provided evidence of facts and circumstances from which a jury could reasonably infer the fire would not have

occurred but for the defendant's negligence. *Id.* at 391–93, 204 S.E.2d at 735–36.

In *Thorburn v. Spartanburg Theatres, Inc.*, the plaintiff sued for negligent maintenance of an electrical system, and the defendant argued the circuit court erred in submitting the issue to the jury because there was no direct testimony as to the cause of a fire and the jury's conclusion that it was an electrical fire was speculative and unsupported by the evidence. 263 S.C. 165, 168–69, 208 S.E.2d 919, 920 (1974). Our supreme court was "convinced that the evidence warranted a reasonable inference that the fire was caused by defendant's failure to properly maintain the electrical system, which required submission of the case to the jury, even though the evidence did not exclude all possibility of some other cause of plaintiff's injury." *Id.* at 169, 208 S.E.2d at 920.

 We are likewise convinced that the circuit court properly submitted this issue to the jury. To establish proximate cause, Winthrop needed to provide evidence that Pickens's breach of duty—here, the storage of combustible materials on the flat roof—was a cause in fact of the damages and was a legal cause.

Here, there was evidence that the fire would not have occurred but for Pickens's negligence. The parties stipulated that the fire began on the flat roof. Arnold provided expert testimony that the flames on the flat roof would not have reached the height they reached and consequently spread to the pitched roofs but for the presence of combustibles. Arnold also testified that the fire would have self-extinguished on the flat roof without the presence of combustibles. Viewing the evidence in the light most favorable to Winthrop, this constitutes evidence warranting a reasonable inference that the presence of improperly placed combustible materials was a direct cause of the fire damages, as the fire would not have spread to either of the pitched roofs nor caused significant damages but for Pickens's acts.

Moreover, we find there was evidence to submit to the jury that the damages were foreseeable. Like the circuit court, we find unpersuasive Pickens's argument that the damages were unforeseeable because the work crew left the exact materials that would eventually compose the Bancroft Hall roof on the

flat roof. The fire code specifically prohibits the storage of combustible materials near a construction site, and one of the stated purposes of the fire code is to prevent the spread of fire. Because a reasonable inference could be drawn that the storage of prohibited combustible materials near a construction project could cause the quick spread of a fire, the question of foreseeability was properly submitted to the jury. *See id.* ("Proximate cause is normally a question of fact for determination by the jury, and may be proved by direct or circumstantial evidence." (quoting *Player*, 259 S.C. at 606, 193 S.E.2d at 533)).

Pickens argues that Winthrop's claims failed as a matter of law because Winthrop could not identify the specific ignition source for the roof fire. However, here, as in *Thorburn*, "the circumstances under which the fire originated and its destructive effect precluded direct proof of its cause." 263 S.C. at 168, 208 S.E.2d 920; *see also Scavens v. Macks Stores, Inc.*, 577 F.2d 870, 872 (4th Cir. 1978) (stating direct testimony of fire chief, expert testimony, and "circumstantial evidence tending to indicate a gas fire had occurred" provided sufficient factual basis from which jury "could have reasonably concluded that the fire resulted from the ignition of a combustible mixture of air and natural gas. The jury could also have reasonably concluded that any one of the identified potential sources of ignition could have ignited the fire and that, since the store contained no other source of natural gas, a leak in the gas heater line provided the natural gas."). Accordingly, we do not view the question of the specific ignition source fatal to Winthrop's claims; we find Winthrop provided the necessary direct and circumstantial evidence to establish causation of the fire damages and support the submission of this issue to the jury.

### III. Jury Charge

Pickens argues the circuit court erred in failing to give the jury a complete charge on proximate cause following the jury's request for a recharge. Pickens complains the circuit court prejudiced it by omitting the "touchstone" of the definition of proximate cause—foreseeability. Pickens asserts that the charge was particularly important because the cause of the fire was the primary issue in the case, and the circuit

court's failure to give a complete instruction on both elements of proximate cause misguided the jury, led to potential juror confusion, and prejudiced Pickens. We disagree.

"In reviewing an alleged error in jury instructions, we are mindful that an appellate court will not reverse the trial court's decision absent an abuse of discretion." *Pope v. Heritage Cmtys., Inc.*, 395 S.C. 404, 414, 717 S.E.2d 765, 770 (Ct. App. 2011). "In order to warrant reversal for refusal of the [circuit court] to give requested jury instructions, such refusal must have been both erroneous and prejudicial." *Horry Cty. v. Laychur*, 315 S.C. 364, 368, 434 S.E.2d 259, 262 (1993). "When the jury requests additional charges, it is sufficient for the court to charge only the parts of the initial charge which are necessary to answer the jury's request." *Rauch v. Zayas*, 284 S.C. 594, 597, 327 S.E.2d 377, 378 (Ct. App. 1985). "Its failure to charge in greater detail is not error if the details were fully covered in the original charge." *Id.* "Moreover, an alleged error in a portion of the charge must be prejudicial to the appellant to warrant a new trial." *Id.*

Here, the circuit court's original charge contained a lengthy explanation of proximate cause, which included an explanation of foreseeability. When the jury requested additional instruction on the definition of proximate cause, the circuit court gave a more succinct definition, defining proximate cause as "something that produces a natural chain of events which in the end brings about the injury" and "a direct cause without which the damage would not have occurred." This is an accurate statement of the law. *See McNair v. Rainsford*, 330 S.C. 332, 349, 499 S.E.2d 488, 497 (Ct. App. 1998) ("Proximate cause is the efficient or direct cause of an injury."). The portion charged was responsive to the jury's recharge request. *See Rauch*, 284 S.C. at 597, 327 S.E.2d at 378 ("When the jury requests additional charges, it is sufficient for the court to charge only the parts of the initial charge which are necessary to answer the jury's request."). Accordingly, we find no error in the circuit court's recharge.

## IV. Bifurcation

Pickens contends the circuit court erred in bifurcating the trial because causation and damages were inextricably

intertwined. Pickens asserts considerations of judicial economy and convenience should not have outweighed its right to a fair trial in which the jury could have considered causation and damages together.

"This court must review a trial judge's decision to bifurcate the issues of liability and damages under an 'abuse of discretion' standard." *Creighton v. Coligny Plaza Ltd. P'ship*, 334 S.C. 96, 108, 512 S.E.2d 510, 516 (Ct. App. 1998). Rule 42(b), SCRCP, provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Constitution or as given by a statute of the State.

Rule 42(b), SCRCP. "A trial should be bifurcated only if the issues are so distinct that trial of each alone would not result in injustice." *Creighton*, 334 S.C. at 108, 512 S.E.2d at 516. "Where evidence relevant to the issues of both liability and damages overlap, bifurcation is inappropriate." *Id.*

We find the circuit court properly exercised its discretion in bifurcating the trial. Because most of the damages witnesses would not be called during the liability phase, the circuit court reasoned it would save time and resources by trying the liability phase separately. We find the bases for the circuit court's ruling—convenience and judicial economy—are legitimate reasons for bifurcation. *See* Rule 42(b), SCRCP.

Moreover, we do not find bifurcation resulted in injustice to Pickens because the liability and damages evidence did not overlap. Indeed, the evidence presented during the damages phase was limited to topics such as the documentation of Winthrop's damages; cleanup, reconstruction, and electronics restoration; and the invoices from and payments to those performing such work after the fire. Thus, bifurcation was appropriate.

## V. Directed Verdict—Damages

Pickens argues the circuit court erred in denying its directed verdict motion in the damages phase because Winthrop failed to provide evidence for the jury to determine with reasonable certainty the damages caused by Pickens. Specifically, Pickens asserts that the jury did not have any evidence of the cost of repairs for Winthrop absent Pickens's breach of duty and erroneously held Pickens liable for all of Winthrop's losses in the fire even though under Winthrop's theory, Pickens's actions merely aggravated the fire damages. We disagree.

"Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981). "The existence, causation, and amount of damages cannot be left to conjecture, guess, or speculation." *Pope*, 395 S.C. at 434, 717 S.E.2d at 781. "Actual or compensatory damages include compensation for all injuries which are naturally the proximate result of the alleged wrongful conduct of the defendant." *Mellen v. Lane*, 377 S.C. 261, 287, 659 S.E.2d 236, 250 (Ct. App. 2008). "An owner can recover for property destroyed or damaged by fire such damages as will restore him to the same property status that he occupied before his property was burned." *Nelson v. Coleman Co.*, 249 S.C. 652, 659, 155 S.E.2d 917, 921 (1967).

Viewing the evidence in the light most favorable to Winthrop, we find the circuit court did not err in submitting the damages issue to the jury. *See Pope*, 395 S.C. at 434, 717 S.E.2d at 781. Pickens does not challenge the evidence of the amount of damages Winthrop suffered from the fire. Rather, Pickens complains about a lack of evidence of causation of the damages, asserting Winthrop's evidence did not enable the jury to determine with reasonable certainty the amount of damages attributable to Pickens's actions. Although Pickens suggests it could have caused only a portion of the damages due to its role in the spread or exacerbation of the fire, Winthrop's expert testified that the fire would not have spread and would have completely extinguished, except on the flat roof area, but for the presence of the improperly placed

combustibles. This testimony alone provides sufficient evidence to support the circuit court's submission of the damages question to the jury. Winthrop produced the testimony of six witnesses as well as a binder of invoices encompassing the repair and reconstruction costs, from which the jury was able to determine damages with reasonable certainty. Accordingly, we find the circuit court properly denied Pickens's directed verdict motion as to damages.

## VI. Comparative Negligence and Breach of Contract

Finally, Pickens argues the circuit court erred in failing to adjust the jury's damages verdict for breach of contract in accordance with its comparative negligence determination. Pickens asserts the breach of contract claim is coextensive with the negligence claim because the contract merely acknowledged certain duties imposed by statute rather than imposing new obligations on Pickens. Pickens contends it would violate public policy for "a contracting party to essentially incorporate by reference the duties to which the opposing party is otherwise bound by law into a contract and thereby escape an apportionment of liability for his own contributions to a particular loss." We disagree.

"Election of remedies is the act of choosing between different remedies allowed by law on the same state of facts." *Inman v. Imperial Chrysler–Plymouth, Inc.*, 303 S.C. 10, 13, 397 S.E.2d 774, 776 (Ct. App. 1990). "It is a fundamental rule of law in this state that there can be no double recovery for a single wrong." *Id.* "Plaintiffs may only recover once for their actual damages." *Id.* "If multiple causes of action are raised on the same set of facts, the plaintiff may be required to elect his remedy to prevent a double recovery for a single wrong." *Harbin v. Owens–Corning Fiberglas*, 316 S.C. 423, 429, 450 S.E.2d 112, 115 (Ct. App. 1994).

In *Ritter & Associates, Inc. v. Buchanan Volkswagen, Inc.*, Ritter sued BVW for breach of contract, negligence, and negligent supervision for damages it caused in a check kiting scheme. 405 S.C. 643, 648, 748 S.E.2d 801, 804 (Ct. App. 2013). The special referee found in favor of Ritter on its breach of contract claim and awarded $434,000 in damages, but granted judgment in favor of BVW on the negligence causes of action

because the "allegations of negligence and negligent supervision were merely examples of the nonperformance of the contractual obligations between the parties." *Id.* On appeal, BVW argued the special referee erred in failing to apportion liability to Ritter based on its own negligent business practices, asserting "[e]ven though the basis for the award sounds in contract, the negligence on Ritter's part can serve to mitigate or even entirely subsume the amount of the award." *Id.* at 651, 748 S.E.2d at 805. However, this court held the apportionment theory inapplicable because comparative negligence applies only to a plaintiff in a negligence action, and Ritter recovered under a breach of contract theory. *Id.*

Pickens argues comparative negligence should govern the damages award "because there [was] truly no legal distinction in the breach of the duty that [was] occasioned in the breach of contract cause of action and the negligence cause of action in this particular case." Pickens asserts *Ritter* is distinguishable because only contract liability existed in that case; thus, it did not involve an election of damages, whereas the jury here found Pickens liable in contract and tort. We agree that the situation is distinguishable; however, we nonetheless find Winthrop could properly elect to recover the non-apportioned damages awarded for breach of contract. *See Ritter*, 405 S.C. at 651, 748 S.E.2d at 805 ("[U]nder South Carolina law, the doctrine of comparative negligence is only applicable to cases alleging negligence as a cause of action."). South Carolina's precedent that comparative negligence is inapplicable to a breach of contract theory governs this situation. Although Pickens argues this case presents a unique factual situation requiring an exception to the rule, it cites no persuasive authority to support its public policy argument. Accordingly, we affirm the ruling of the circuit court.

**CONCLUSION**

Accordingly, the decision of the circuit court is

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.